PATTERSON et al., Appellants,

v.

RAVENS–METAL PRODUCTS, INC., Appellee.

[Cite as *Patterson v. Ravens–Metal Prod., Inc.* (1991), 72 Ohio App.3d 216.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 57387.

Decided Jan. 22, 1991.

*Gerald R. Walton, Mattioni, Mattioni & Mattioni, Ltd.* and *John Mattioni,* for appellants.

*Meyers, Hentemann, Schneider & Rea Co., L.P.A.,* and *Thomas L. Brunn,* for appellee.

JOHN F. CORRIGAN, Presiding Judge.

The plaintiff,[1] Roger Patterson, appeals from a jury-trial judgment for the defendant manufacturer, Ravens–Metal Products, Inc., in this products liability action. This court originally dismissed the plaintiff's appeal for want of a final appealable order. See Civ.R. 54(B). However, subsequent to our dismissal order, the trial court at the plaintiff's request corrected *nunc pro tunc* the judgment entry, from which he appeals, in accordance with the requirements of Civ.R. 54(B). This court thereupon granted the plaintiff's motion for reconsideration.

The plaintiff submits twelve assignments of error for our review. We find that each of these asserted grounds for reversal lacks merit. Accordingly, we affirm the trial court's judgment.

I

At approximately 5:00 a.m. on April 15, 1981, the plaintiff sustained severe leg injuries when the thirty-foot dump trailer that he was operating overturned. At the time of the accident the plaintiff was delivering coal to a steel plant for his employer, a trucking company. On April 14, 1983, the plaintiff filed the instant action asserting a products liability claim against the defendant truck manufacturer and a negligence claim against the defendant steel company. The trial court thereafter stayed the proceedings against the steel

---

1. The plaintiff's former wife seeks damages for incurred medical expenses and for loss of consortium. However, for the sake of convenience, our reference to "the plaintiff" in this opinion relates only to the individual who sustained physical injuries as a result of the accident.

company following its filing of a petition for reorganization in bankruptcy court. The action proceeded to trial on the products liability claim.

At trial the plaintiff sought to establish that the dump trailer was defective with respect to (1) its structural design, (2) the absence of safety devices that would have warned the operator of danger or would have prevented the trailer from overturning, and (3) the lack of adequate warning labels. Aside from attempting to rebut the plaintiff's claims that the dump trailer was defective, the defendant sought to show that the plaintiff had misused the dump trailer and that the plaintiff had assumed the risk of overturning the trailer. Since the jury decided the case on the liability issue and accordingly did not reach the issue of damages, we shall recount only that evidence adduced at trial relating to liability.

The plaintiff testified that after quitting high school he attended a government-sponsored technical school for two years where he learned how to operate heavy construction equipment. Here he learned to operate straight dump trucks but received no training or experience operating dump trailers. In 1973, the plaintiff began his career as a truck driver, initially driving trucks with flat bed trailers delivering steel, pipe, and heavy equipment.

In July 1978, he accompanied one of the owners of the trucking company, his brother-in-law, when the latter accepted delivery of the dump trailer which the company had recently purchased. The company purchased the dump trailer, a 1978 model, in new condition. The two went to the manufacturer's Dover, Ohio facility in order to pick up the dump trailer. The plaintiff testified that at that time he observed no signs or labels on the dump trailer aside from the defendant manufacturer's label. He further testified that no warning labels were placed on the dump trailer following its purchase and, more specifically, asserted that there were no warning labels on the dump trailer at the time of the accident.

The plaintiff began working regularly as a driver for the trucking company in February 1981. Prior to that time he accompanied the trucking company's owner occasionally when the owner used the dump trailer to make deliveries. During this time the owner instructed the plaintiff concerning the operation of the dump trailer, including warnings to keep the truck and the trailer in a straight line during dumping operations and to dump on level ground. He testified that he knew of and received no other instructions concerning the prevention of tip-overs.

Upon the commencement of his employment with the trucking company, the plaintiff began using the dump trailer to make deliveries of coal, limestone, and agricultural products. His responsibility as a truck driver included ensuring that any load was properly distributed in the dump trailer.

The accident occurred when the plaintiff, accompanied by his wife, was making a delivery of coal to the steel company's Cleveland plant after acquiring the load in Pennsylvania. The two had made a similar delivery of coal the previous week without mishap. On the occasion of the accident, the plaintiff arrived in Brockway, Pennsylvania at approximately 5:00 p.m. in order to pick up 56,000 pounds of coal. After a front-end loader loaded the coal into the dump trailer, the plaintiff, using a shovel, manually distributed the load and tarped the trailer. He estimated the unloaded weight of the trailer to have been 30,000 pounds. The plaintiff admitted that he knew that Ohio's maximum gross weight limit for trucks and their trailers is 80,000 pounds.

They arrived at the steel plant at approximately 5:00 a.m. and plant employees directed the plaintiff to dump the load generally in the area where he had dumped coal the previous week. The plaintiff testified that he attempted to back the truck and trailer to a spot that appeared suitable to dump the coal. Having backed too far over from the spot where he wanted to dump, he pulled up in order to try to back into the correct area once more. When he looked back, he observed that the tires to the trailer had created ruts in the coal. The plaintiff then took his shovel, filled in the ruts, and attempted to level the area as much as possible. Trying to dump once more, he again noticed that the trailer had settled into more ruts. Several times thereafter he repeated the procedure of leveling the dumping area and then backing the trailer, hoping to pack the coal to a level surface. After this series of attempts, he began to dump the load.

The bed of the dump trailer is raised by a single hydraulic "ram" which consists of four telescoping steel cylinders. After approximately two of the four cylinders had been hydraulically extended, the plaintiff noticed that the dump trailer was again sinking into more ruts. The plaintiff lowered the bed, pulled the trailer up, and again attempted to level and pack the coal in the dumping area.

After accomplishing this, the plaintiff backed the trailer again. He inspected the ground around the trailer and found it to be "pretty solid" and "pretty level." Satisfied, he commenced to dump again.

The dump trailer is operated by controls situated under the driver's seat in the truck cab. After engaging the dump trailer, the plaintiff stepped out of the truck cab and stood on the fuel tank to observe the dumping operation. He testified that after the third cylinder in the hydraulic ram had been extended, he saw the bed swing to the right and then swing violently back to the left, overturning the truck and trailer. As the truck flipped on its side, the plaintiff dove into the cab of the truck. However, his feet and ankles

were caught and crushed against the cab door frame. His wife, who was sleeping in the cab at the time of the accident, escaped from the truck cab uninjured and obtained emergency assistance for the plaintiff.

During cross-examination by defense counsel, the plaintiff identified a warning label presented as a defense exhibit. The plaintiff testified that he had seen such labels on "all types of equipment" dating back to his technical school experience. The label contained the following warnings:

"Tractor and trailer must be in a straight line on firm, level ground and all trailer wheels must contact ground before dumping load.

"The load must be evenly distributed during loading and dumping. Wet loads may hang up in the front of the trailer and cause an upset.

"Stay at controls while dumping and lower body immediately if body leans or shifts to one side while dumping.

"Do not move trailer unless body is completely lowered.

"Do not attempt to dump the load in high wind conditions.

"Do not load in excess of the gross vehicle weight rating shown on the certification plate."

The plaintiff testified that he was aware of all of those warnings prior to the accident. He admitted that on the morning of the accident he was concerned about the wind when he dumped. However, he maintained that the ground was sufficiently level and stable to dump at the time that the accident occurred.

The owner of the trucking company testified on the plaintiff's behalf. He stated that there was no warning label on the dump trailer when he purchased it. He further stated that he purchased the dump trailer partially in reliance on the manufacturer's advertised claim that the trailer could carry a 150,000 pound load. As the plaintiff had testified previously, he knew that the gross weight limit in Ohio is 80,000 pounds.

The plaintiff's former wife testified for the plaintiff. She confirmed that the trucking company owner, her brother, instructed the plaintiff to dump only on level ground. She further claimed that there were no warning labels on the dump trailer at any time. The witness also asserted that the area where the plaintiff attempted to dump "was as level as could be expected" and similar to other areas where the plaintiff had operated the dump trailer. However, on cross-examination she admitted that after the accident she observed "an impression where the truck was sitting."

The plaintiff's expert witness, a mechanical engineer, testified that the beds of aluminum dump trailers, like those manufactured by the defendant, had a greater tendency to sway out of line of the rear-to-front axis of the truck and

trailer since aluminum is more flexible than steel. The witness claimed that where the bed shifted five or more degrees from center, the trailer would overturn. Such a shift could occur as a result of a "hung load," weak springs, under-inflated tires, or dumping on unstable ground or ground that was not level. He indicated that unlevel ground was a reasonably foreseeable hazard of dumping since construction sites and coal yards generally lacked perfectly flat dumping surfaces.

The witness testified that the problem could be alleviated by stiffening of the trailer frame, using hydraulic cylinders in conjunction with frame springs, equipping the trailer with outriggers in order to stabilize the trailer during the dumping operation, attaching a builder's level to the trailer in order to permit the operator to monitor the dumping operation, and using twin hydraulic cylinders to raise the bed rather than the single cylinder. He further testified that the trailers needed large metal danger signs affixed to the trailer in order to ensure that operators knew of the dangers of hung loads, broken or weak springs, low tire pressure, and other conditions that would result in a trailer overturning. He testified that in the mid–1970s a Texas manufacturer patented the "Bed Buddy" system, which automatically lowered the bed if it shifted beyond a safe angle.

The expert witness concluded that the defendant's dump trailer was defective with respect to both design and adequate warnings and that the design defects resulted in the plaintiff's injuries.

The general manager of the firm that manufactured the Bed Buddy testified by videotape. He stated that a patent for the system was granted in 1975. The witness explained that the system automatically lowers a bed once it goes more than four or five degrees off center. The system had gone out of production in 1985 after poor sales. The price for the system was approximately $550. The witness agreed that twenty percent of the repair work done by the trailer industry related to tip-over accidents.

The defendant's expert witness, also a mechanical engineer, testified that the defendant's dump trailer was not defectively designed. He claimed that the safety measures proposed by the plaintiff's expert witness, although technically feasible, did not constitute practical solutions to the tip-over problem. The witness explained that the Bed Buddy system did not alleviate the potential for a tip-over since, once the bed was raised to a perilous position, the bed could not be lowered quickly enough to prevent a trailer from overturning. The witness further testified that he knew of no practical safety devices that would have prevented the plaintiff's accident.

The witness opined that the accident occurred as a result of unstable ground, a hung load, and wind. He stated that the plaintiff, by proceeding to

dump on unstable ground and failing to ascertain whether there was a hung load in the trailer, contributed to the accident.

The defendant's engineering director since 1982 testified on the defendant's behalf. He similarly rejected the plaintiff's expert's safety design proposals as impractical. The witness asserted that the company's records indicated only two tip-over occurrences in the company's thirty-two years of business. He stated that he was aware of no significant tip-over problem in the dump trailer industry.

The witness testified that the defendant as a matter of regular practice places warning labels on the front of their trailers. He produced from company files a packet of safety and operation materials provided to purchasers of dump trailers in the 1970s.

The engineering director further testified that the company field-tested the Bed Buddy system in a dump trailer similar to the one involved in the accident. The company found that the system engaged only when a shift of eight or nine degrees occurred. The company concluded that the system was not effective.

The defendant's chief executive officer testified by videotape that the company had manufactured approximately ten thousand dump trailers in its history. He knew of no "major" tip-over problem in the dump trailer industry. He estimated that less than one-half of one percent of all dump trailers were involved in tip-over accidents in a given year.

## II

The plaintiff, in his first four assignments of error, challenges the trial court's instructions to the jury.

■ "Instructions must be viewed in their totality, and if the law is clearly and fairly expressed, no reversal will be predicated upon error in a portion of the charge." *Laverick v. Children's Hosp. Medical Ctr. of Akron* (1988), 43 Ohio App.3d 201, 202, 540 N.E.2d 305, 307; see, also, *Snyder v. Stanford* (1968), 15 Ohio St.2d 31, 44 O.O.2d 18, 238 N.E.2d 563, paragraph three of the syllabus (no reversible error where court's charge, when considered as a whole, is not prejudicial to the complaining party).

■ In a civil action, a trial court ordinarily must submit a determinative issue to the jury where the evidence would permit reasonable minds to reach different conclusions with respect to that issue. *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 220, 58 O.O.2d 424, 427, 280 N.E.2d 896, 899. On the other hand, a trial court must withhold an essential issue from the jury where there is not sufficient evidence to permit reasonable minds to reach contrary

conclusions. *Helmick v. Republic–Franklin Ins. Co.* (1988), 39 Ohio St.3d 71, 74, 529 N.E.2d 464, 467.

A trial court must refuse to give a special instruction where the instruction constitutes an incorrect statement of the law or fails to apply to an issue raised by the evidence in the case. *Pallini v. Dankowski* (1969), 17 Ohio St.2d 51, 46 O.O.2d 267, 245 N.E.2d 353, paragraph two of the syllabus. Similarly, a trial court in its discretion may accept or refuse requested cautionary instructions relating to the jury's determination of dispositive issues. Cf. Civ.R. 51(B). However, a party's failure to object in a timely manner to the trial court's instructions or to the trial court's refusal to give a requested instruction waives any error. Civ.R. 51(A).

The plaintiff, in his first assignment of error, complains that the trial court instructed the jury on the issue of assumption of risk and submitted an interrogatory on that issue to the jury. He argues that the evidence did not support the submission to the jury of the issue of assumption of risk.

"Voluntary and unreasonable assumption of a known risk posed by a product constitutes an absolute bar to recovery in a products liability action based upon strict liability in tort." *Onderko v. Richmond Mfg. Co.* (1987), 31 Ohio St.3d 296, 31 OBR 576, 511 N.E.2d 388, syllabus. A person assumes the risk where the individual has knowledge of the danger and intelligently and voluntarily proceeds despite the known danger. Cf. *Riley v. Cincinnati* (1976), 46 Ohio St.2d 287, 297, 75 O.O.2d 331, 337, 348 N.E.2d 135, 142.

In the instant action, the plaintiff testified that he knew that safe dumping required level, stable ground and that the wind could affect the dumping procedure. However, his testimony reveals that he attempted to dump despite knowing that the ground was not level, was unstable, and despite being concerned by the wind. From this evidence, reasonable minds could reach contrary conclusions regarding whether the plaintiff assumed the risk. Accordingly, the trial court properly submitted this issue to the jury.

The plaintiff, in his second assignment of error, contends that the trial court erred in instructing the jury on the issue of misuse. However, the plaintiff failed to specifically object to that instruction prior to the retirement of the jury for deliberation. Accordingly, the plaintiff has waived his right to assert error in this respect. Civ.R. 51(A). Further, the plaintiff may not prevail on the basis of "plain error" since the record fails to disclose that the challenged instruction resulted in a manifest miscarriage of justice. Cf. *Cleveland Elec. Illum. Co. v. Astorhurst Land Co.* (1985), 18 Ohio St.3d 268, 275, 18 OBR 322, 327, 480 N.E.2d 794, 800 (plain error doctrine invoked with regard to trial court's charge only "under exceptional circumstances to

prevent a manifest miscarriage of justice"). Evidence adduced at trial raised the issue that the plaintiff may have misused the dump trailer by (1) commencing the dumping procedure on unstable ground, and (2) overloading the trailer. Accordingly, the trial court could properly submit the issue of misuse to the jury.

The plaintiff, in his third assignment of error, posits that the trial court erred in failing to instruct the jury (1) that contributory negligence does not constitute a defense in a products liability action predicated upon strict liability (see *Bowling v. Heil Co.* (1987), 31 Ohio St.3d 277, 31 OBR 559, 511 N.E.2d 373, paragraph one of the syllabus); and (2) concerning the distinction between the doctrines of contributory negligence and assumption of risk. As a subsidiary issue, he complains that the trial court erred in permitting the defendant's expert to opine, over plaintiff's counsel's objection, that the plaintiff's conduct contributed to the accident. .

 We agree that since contributory negligence is not an issue, the trial court should have excluded that testimony. However, upon viewing the record in its entirety, we cannot conclude that those isolated comments substantially prejudiced the plaintiff. See Evid.R. 103(A) (no error predicated upon admission of evidence absent substantial right of party affected). We are led to this conclusion by the trial court's instructions. The trial court clearly instructed the jury that misuse of the product precluded liability and that assumption of risk constituted a complete defense to the plaintiff's claim. In this regard, the trial court stated:

"Now, if the plaintiff, Mr. Patterson, voluntarily assumed a known risk, he cannot recover.

"To assume a risk, a person must actually know of the danger or the danger must be sufficiently obvious to permit you to infer that he knew of and realized the danger.

"In addition, he must have had a conscious opportunity to avoid such danger by the use of ordinary care.

"Now, assumption of risk is what we call an affirmative defense.

"The burden of proof on this issue is upon the defendant.

"If you find that the defendant has established by a preponderance of the evidence the plaintiff actually knew of the danger and that the danger was sufficiently obvious to persuade you that he knew of and realized the danger, and the plaintiff had a conscious opportunity to avoid such danger by use of ordinary care, then the plaintiff cannot recover.

"However, if the defendant fails to prove any one of the foregoing elements, then plaintiff did not assume the risk, and dismiss that issue from any further consideration."

Accordingly, the trial court's instructions, in conjunction with the interrogatory concerning assumption of the risk, precisely directed the jury to the determination of that defense without regard to contributory negligence. Hence, it cannot be reasonably concluded that the limited improper evidence introduced at trial concerning contributory negligence significantly tainted the jury's verdict.

■ With regard to the trial court's refusal to give the cautionary instructions requested by the plaintiff, the trial court acted within its discretion in refusing to submit those instructions. Since contributory negligence was not an issue in the case, the trial court could reasonably conclude that any instruction concerning contributory negligence would merely serve to confuse the jury.

■ The plaintiff, in his fourth assignment of error, challenges the trial court's instruction concerning the elements of his products liability claim. He first asserts that the trial court failed to instruct the jury that a product may be found to have been defectively designed where the product's design "embodies excessive preventable danger." Under Ohio law, a product may be found to have been defectively designed where "the benefits of the challenged design do not outweigh the risk inherent in such design." *Knitz v. Minster Machine Co.* (1982), 69 Ohio St.2d 460, 23 O.O.3d 403, 432 N.E.2d 814, syllabus. The trial court, in its instruction, charged:

"There is defined another standard by the law which states when a product may be considered as also being defective, and that is what is referred to as the risk/benefit standard.

"And this applies if the benefits of the design of the product as a whole do not outweigh the risks of danger inherent in the design."

The trial court's instruction clearly comports with the law of this state and apparently satisfies the gist of the plaintiff's complaint. He also argues in his fourth assignment of error that the trial court failed to instruct the jury that a product may be defectively designed due to the absence of adequate warnings. The plaintiff has waived this claim by failing to object to the absence of the requested instruction before the jury retired. Civ.R. 51(A).

The plaintiff's first, second, third, and fourth assignments of error lack merit.

## III

The plaintiff, in his fifth, sixth, seventh, eighth, ninth, and tenth assignments of error, challenges the trial court's rulings concerning the admission and exclusion of evidence.

Generally, a reviewing court shall not order reversal based upon the exclusion or admission of evidence unless the complaining party preserves the right to claim error by raising a timely objection and unless the ruling results in substantial prejudice. See Evid.R. 103(A). Further, where a party complains that the trial court erred in excluding evidence, in order to preserve the right to claim error the substance of the excluded evidence must be apparent from the context of the question asked or otherwise made known by proffer. Evid.R. 103(A)(2). Moreover, a reviewing court shall not reverse a trial court's judgment based upon an evidentiary ruling absent a showing that there occurred a clear and prejudicial abuse of discretion. *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 163, 17 O.O.3d 98, 100, 407 N.E.2d 490, 493. Accordingly, this court shall not order reversal unless the record affirmatively demonstrates that the trial court acted unreasonably, unconscionably, or arbitrarily. Cf. *Ruwe v. Bd. of Springfield Twp. Trustees* (1987), 29 Ohio St.3d 59, 61, 29 OBR 441, 443, 505 N.E.2d 957, 959 ("abuse of discretion" defined).

The plaintiff, in his fifth assignment of error, contends that the trial court erred in admitting testimony tending to show that the defendant's dump trailer design conformed with the state of the art of the industry at the time of its manufacture. He initially complains that the trial court allowed testimony (1) by the owner of the trucking company that other trailer manufacturers did not use warning signs, (2) by the defendant's president that all manufacturers used the same basic manufacturing process, and (3) by the defendant's engineering director that other manufacturers do not include frame stabilizers in their design. With respect to this evidence, the plaintiff has waived any right to claim error, having failed to raise timely objections below. See Evid.R. 103(A).

The plaintiff did object to the admission of testimony (1) by the plaintiff's expert witness that all other manufacturers of trailers in 1978 failed to address the problem of lateral stability, and (2) by the defendant's expert witness that he knew of no manufacturers who included outriggers in their dump trailer design. However, the trial court acted within its discretion in permitting this testimony since state of the art is a factor which a jury may properly consider in determining the issue of whether a product is defective under the risk/benefit standard. See *Sabel v. Newbury Indus., Inc.* (Dec. 31, 1985), Lake App. No. 10–197, unreported, 1985 WL 4935.

■ The plaintiff, in his sixth assignment of error, complains that the trial court erred in admitting the testimony of the defendant's engineering director regarding the defendant's out-of-court experiments with the "Bed Buddy" system. He specifically argued that the defendant failed to establish a basis of substantial similarity between the experiment and the conditions existing at the time of the accident. See *McQueen v. Goldey* (1984), 20 Ohio App.3d 41, 49, 20 OBR 44, 51, 484 N.E.2d 712, 720.

However, the record fails to disclose that the plaintiff objected to this evidence at trial. Accordingly, he has waived any right to claim error in this regard. Evid.R. 103(A). Further, the trial court could properly admit such evidence because any dissimilarities between the experiment and the actual occurrence affect the weight rather than the admissibility of the evidence. See *McQueen v. Goldey, supra,* at 49, 20 OBR at 51, 484 N.E.2d at 720.

The plaintiff, in his seventh assignment of error, contends that the trial court erred in permitting statements indicating that only two turnovers had occurred involving the ten thousand trailers sold by the defendant. The plaintiff points to five instances in the record where defense counsel either made such statements during the cross-examination of a defense witness or during closing argument or otherwise elicited testimony to that effect. Plaintiff failed to object to any of these statements and accordingly has waived any right to assert error.

The defendant, in his eighth assignment of error, contends that the trial court erred in admitting portions of the videotaped deposition of the defendant's president. During the taking of the deposition, plaintiff's counsel objected to the witness's testimony that a driver takes an "unnecessary risk" when he attempts to dump on ground that is not level. Plaintiff argues on appeal that defense counsel failed to qualify the witness as an expert prior to this testimony. See Evid.R. 702. Plaintiff's counsel further objected to the witness's claim that the company placed warning labels on its dump trailers in 1978. The plaintiff contends on appeal that the witness testified outside the scope of his personal knowledge in violation of Evid.R. 602.

In regard to each of these alleged irregularities, the record fails to show that the plaintiff preserved his right to assert error by renewing his objections prior to the showing of the videotaped testimony and requesting that the trial court rule on those objections. See C.P.Sup.R. 12(A)(15); *Berwald v. Ford Motor Co.* (May 6, 1982), Cuyahoga App. No. 44064, unreported, 1982 WL 5337; see, also, Civ.R. 32(D)(3).

■ The plaintiff, in his ninth assignment of error, alleges that the trial court erred in permitting the defendant's engineering director to identify a warning label as a label supplied to dump trailer purchasers by the manufac-

turer during 1978. He argues that the witness could not have personal knowledge of the fact since he did not become employed by the defendant until 1982. The plaintiff further complains that the witness lacked personal knowledge to testify that the manufacturer affixes those labels strategically in an area visible to the drivers who operate those trailers.

While the trial court may well have erred in permitting the witness to identify the label since he lacked personal knowledge of the matter (see Evid.R. 602), any error failed to substantially prejudice the plaintiff. As noted previously, the plaintiff failed to ensure that the trial court submitted the issue of adequate warnings to the jury. Accordingly, any evidence on this issue would have no bearing on the jury's verdict.

■ The plaintiff, in his tenth assignment of error, asserts that the trial court erred in excluding testimonial and photographic evidence concerning subsequent changes in the form and content of the defendant's warning labels. Here, too, the admission or exclusion of such evidence on the issue of adequate warnings could not have been determinative of the outcome of trial.

We overrule the plaintiff's fourth through tenth assignments of error.

### IV

The plaintiff, in his eleventh assignment of error, challenges the trial court's denial of his motion for judgment notwithstanding the verdict.

"The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied.

"Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions." *Posin v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 430, 344 N.E.2d 334, 338.

In the instant action, the plaintiff testified that he attempted to dump despite knowing that the ground was unstable and not level and despite knowing that windy conditions prevailed. He admitted that he understood prior to the accident that such conditions were inappropriate for dumping. Accordingly, reasonable minds could conclude that the plaintiff assumed the risk of the accident. Further, the defendant presented substantial evidence

rebutting the plaintiff's claim that the manufacturer defectively designed the dump trailer.

Accordingly, the trial court acted within its discretion in overruling the plaintiff's motion for judgment notwithstanding the verdict. We overrule the plaintiff's eleventh assignment of error.

## V

The plaintiff, in his twelfth assignment of error, complains that the trial court erred in overruling his motion for a new trial predicated upon the discovery of new evidence. See Civ.R. 59(A)(8). In support of the motion, the plaintiff filed the affidavit of one of his investigators, who averred that he taped a conversation with one of the defendant's salespersons at the defendant's Dover, Ohio sales and service facilities on January 10, 1989, approximately six weeks following the entry of judgment. The affidavit included a transcript of that taped conversation. The salesman during that conversation, in conflict with the defendant's at-trial claim that only two tip-over accidents had occurred, stated that the facility repaired numerous trailers during the course of a year which had been damaged due to overturning. The salesman asserted that a tip-over accident "happens every day to somebody, somewhere."

The grant or denial of a new trial motion based upon newly discovered evidence rests within the sound discretion of the trial court. *Schwenk v. Schwenk* (1982), 2 Ohio App.3d 250, 252, 2 OBR 272, 274, 441 N.E.2d 631, 633. Accordingly, a reviewing court shall not reverse such an order unless the record affirmatively demonstrates that the trial court abused its discretion. *Id.*

Civ.R. 59(A)(8) provides for the ordering of a new trial on the ground of newly discovered evidence where the evidence is "material for the party applying, [and] which with reasonable diligence he could not have discovered and produced at trial." Here, the court could reasonably conclude that the plaintiff failed to exercise reasonable diligence in producing that evidence. The plaintiff failed to attempt to exercise its discovery rights with respect the defendant's Dover employees during the five years between the filing of his complaint and the commencement of trial. Further, the trial court could reasonably conclude that evidence regarding the accident record of the defendant would not have altered the outcome of trial since the jury found that the plaintiff assumed the risk of a known danger.

We overrule the plaintiff's twelfth assignment of error and affirm the trial court's judgment.

*Judgment affirmed.*

STILLMAN and ROHRS, JJ., concur.

SAUL G. STILLMAN, J., retired, of the Eighth Appellate District, and KENNETH A. ROHRS, J., of the Henry County Common Pleas Court, sitting by assignment.