SAPP, Appellant,

v.

STONEY RIDGE TRUCK TIRE et al., Appellees.

[Cite as *Sapp v. Stoney Ridge Truck Tire* (1993), 86 Ohio App.3d 85.]

Court of Appeals of Ohio,
Lucas County.

No. L-91-300.

Decided Jan. 29, 1993.

86

88

*Richard Shinaberry* and *William Maloney,* for appellant.

*Theodore Tucker III, Willis Jones, Keith Watkins* and *David Cooper,* for appellees.

*Per Curiam.*

This is an appeal from a judgment of the Lucas County Court of Common Pleas which dismissed all claims of appellant, Martin W. Sapp, against appellees, Stoney Ridge Truck Tire, Victor Neubert, Timothy L. Martin and OIS Tire, Inc. ("OIS"), and Oakland Tire, Inc. ("Oakland").

Sapp appeals the judgment of the trial court and sets forth the following assignments of error:

"1. The lower court erred in directing verdicts for the defendants after the opening statement of plaintiff's counsel.

"2. The lower court erred in its instruction to the jury on assumption of risk as a defense to plaintiff's strict liability claim.

"3. The lower court erred in instructing the jury on 'abuse' or 'misuse' as a defense to plaintiff's strict liability claim.

"4. The lower court erred in failing to permit proof and in failing to instruct the jury on the manufacturer's obligation to provide warnings concerning its product."

OIS "cross-appeals" and asserts as error:

"The court below should have granted directed verdict in favor of Cross–Appellant at the close of all the evidence, and its failure to do so was error."

The undisputed facts giving rise to this case are as follows.

OIS is a manufacturer of retreaded tires. It obtains used truck and automobile tires from several different sources and replaces the tread on those tires. Oakland is a distributor and wholesaler of new, used and retreaded tires. Beginning in early 1985, Oakland would pick up used tires from SRTT and send them to OIS or other retreaders. If, after inspection, the casing of the used tire was determined to be suitable for retreading, OIS would place a new tread on the tire. SRTT is a retailer of new, used and retreaded tires. SRTT also performs minor repairs on trucks such as replacement of tires, brakes and wheel bearings. In 1984, SRTT began repairing and/or installing new and retreaded truck tires for Consolidated Rail Corporation ("Conrail").

In December 1986, Oakland picked up a 1985 Firestone truck tire from SRTT and sent it to OIS for retreading. This retreaded tire was returned to SRTT in January 1987. On June 30, 1987, at approximately 6:50 p.m., Martin Sapp, an employee of Conrail, was operating a Conrail truck on State Route 109 when the vehicle skidded, went into a ditch on one side the road, came out of the ditch, crossed the road and ended up in a ditch on the other side. Two pieces of tread

separated from the right rear tire and were later discovered at the accident scene by a Conrail employee. As a result of the accident, Sapp was injured.

In June 1989, Sapp filed a suit against, among others, Conrail and Oakland. During the pendency of that cause, Oakland's motion for summary judgment on Sapp's negligence and breach of warranty claims was granted. In June 1990, Sapp voluntarily dismissed his complaint.

On June 21, 1991, Sapp instituted the instant cause by filing a complaint which named OIS, Oakland and SRTT as defendants. The complaint alleged that the June 30, 1987 accident was caused by the disintegration of the right rear truck tire on the Conrail vehicle and that this tire had been manufactured by OIS and supplied by Oakland and SRTT to Conrail. Based on these facts, Sapp set forth claims of negligence, breach of warranty and products liability. Sapp asserted that he was permanently injured due to the defective tire and resulting accident.

Prior to trial, the lower court incorporated its previous grant of summary judgment to Oakland on Sapp's negligence and warranty claims into the present case. At trial, Sapp's attorney made his opening statement. At its conclusion, OIS and SRTT immediately moved for a directed verdict on the negligence and breach of warranty claims. The court below orally granted both motions.[1] The case then proceeded against all defendants solely upon the legal theory of products liability.

The following evidence adduced at trial is pertinent to our disposition of this cause.

The Conrail truck operated by Martin Sapp was used exclusively for maintaining the right of way on railroad tracks and other light jobs. Pursuant to Conrail policy, retreaded truck tires could be placed upon certain Conrail vehicles. However, Conrail did not permit the use of retreaded tires on right of way maintenance vehicles because they were frequently used for off-road travel. The "right of way" vehicle involved in the June 1987 accident was assigned to Martin Sapp in April 1987. As a Conrail employee, Sapp had a duty to inspect the truck daily and check the air pressure in the tires weekly. He was required to file inspection and maintenance reports. If the truck had a flat tire, Sapp had the authority to determine the means by which it was repaired or replaced.

On May 11, 1987, the rear tires on Sapp's truck were replaced. He testified that SRTT replaced those tires. Sapp's May report indicates that the replace-

---

1. These decisions were journalized on August 2, 1991 (for SRTT) and October 18, 1991 (for OIS). In the August 2, 1991 judgment entry, the trial court mentions a specific date, July 26, 1991. Nonetheless, because it dismissed all claims against SRTT, it clearly intended that SRTT's July 22, 1991 motion for a directed verdict on Sapp's claims of negligence and breach of warranty was granted.

ments were new Firestone tires. Jeff Bruens, a Conrail supervisor, testified that Sapp was obligated to inspect the vehicle after the replacement of a tire and determine whether that tire was new and then sign off on the receipt of the supplier.

It is undisputed that on the day of the accident, the right rear tire on Sapp's truck was a retreaded tire. Testimony at trial revealed that this was the tire retreaded by OIS in December 1986 or January 1987 and returned to SRTT. Sapp's expert witness, George M. Jordan, was of the opinion that a "through and through" puncture existed in the casing of the tire at the time it was retreaded, that OIS should have detected this puncture, and that tread separation on the defective tire caused appellant's accident. Jordan's opinion was based, in part, on the fact that the puncture was in the casing of the tire but was not in the tread which separated from the area of the puncture at some point during the accident.

Edward J. Wagner, expert witness for OIS, opined that abuse of the tire, e.g., excessive speed, caused a material breakdown in the tire casing. As a consequence, the tread separated from the casing. He was of the opinion that the separation of the tread from the casing did not result in a blowout or cause the operator of the truck to lose control of the vehicle. Wagner further stated that, in his opinion, the puncture was not in the tire casing when it was retreaded. This opinion was based upon (1) the belief that such a puncture would have been discovered during the inspection phases of the retreading process; (2) the fact that manufacturing defects in retreaded tires generally fail within the first ten percent to twelve percent of tread wear, and the tread in this case was far beyond that figure, approximately forty percent of tread wear; (3) the area in which the puncture was located showed no signs related to an unrepaired prior penetration, e.g., shininess. Wagner concluded, therefore, that the puncture occurred after the tread came off the tire.

Prior to trial, Martin Sapp stated that he could not recall the accident itself. At trial, he testified that on June 30, 1987, he had just crossed a railroad grade and accelerated to approximately forty-five miles per hour when he heard a loud noise at the rear of the vehicle and the truck jerked. He slammed on his brakes and skidded. Sapp could not remember anything else about the accident. Dr. David Urich, an accident reconstructionist, estimated, by measurement of the skid marks made by the truck, that the vehicle was traveling between sixty and seventy-three m.p.h. at the time of the accident. The speed limit on that part of State Route 109 is fifty-five m.p.h. In Urich's opinion, Sapp slammed on the brakes, the wheels on the truck locked and it went into a spin. However, Urich was unable to pinpoint the cause of the accident.

The evidence offered at trial established that the results of a blood alcohol test administered by the hospital approximately ninety minutes after the accident

revealed that Martin Sapp's blood alcohol was .0246, a reading equalling more than twice the amount used to determine whether an individual has operated a motor vehicle while under the influence of alcohol. Sapp asserted that the results of the blood alcohol test were incorrect because he did not drink any alcoholic beverages on the day of the accident.

At the close of Sapp's case-in-chief, Oakland, OIS and SRTT requested directed verdicts pursuant to Civ.R. 50(A) on the products liability claims asserted against them. The motions of Oakland and SRTT were granted; the motion of OIS was denied. Thus, the sole issue before the jury was whether OIS could be held liable under the theory of products liability.

In a general verdict, the jury found in favor of OIS on the products liability claim. On August 2, 1991, the trial court dismissed Sapp's complaint.[2]

Any further facts necessary for our disposition of a particular assignment of error shall be revealed in our discussion of that assignment.

In his first assignment of error, Sapp contends that the trial court erred in granting a directed verdict to OIS and SRTT on his negligence and breach of warranty claims immediately after his counsel's opening statement.

Civ.R. 50(A) provides that "a motion for a directed verdict may be made on the opening statement of the opponent, at the close of the opponent's evidence or at the close of all the evidence." Nonetheless, the Supreme Court of Ohio held:

"A trial court should exercise great caution in sustaining a motion for a directed verdict on the opening statement of counsel; it must be clear that all the facts expected to be proved, and those that have been stated, do not constitute a cause of action or a defense, and the statement must be liberally construed in favor of the party against whom the motion has been made." *Brinkmoeller v. Wilson* (1975), 41 Ohio St.2d 223, 70 O.O.2d 424, 325 N.E.2d 233, syllabus.

A directed verdict may be granted only when a court finds that reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for a directed verdict is sought. *Mitchell v. Cleveland Elec. Illuminating Co.* (1987), 30 Ohio St.3d 92, 93, 30 OBR 295, 295–296, 507 N.E.2d 352, 353. Both the opening statement and the allegations in the complaint must be considered in determining whether a justiciable cause exists. *Archer v. Port Clinton* (1966), 6 Ohio St.2d 74, 76, 35 O.O.2d 88, 89–90, 215

---

2. Sapp does not challenge the award of summary judgment to Oakland on his negligence and breach of warranty claims or the grant of Oakland's motion for a directed verdict on his product liability claim. Thus, Oakland is not a party to this appeal.

N.E.2d 707, 709. See, also, *Brentson v. Chappell* (1990), 66 Ohio App.3d 83, 89, 583 N.E.2d 434, 438.

■ The essential elements for a claim based upon negligence are duty, breach of that duty, and damage or injury which is a proximate result of the breach. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 285, 21 O.O.3d 177, 179–180, 423 N.E.2d 467, 470. In this case, Sapp's pleadings alleged that OIS "negligently manufactured" the retreaded right rear tire that "disintegrated" on the truck operated by Sapp on June 30, 1987, that OIS knew or should have known of the defect and that Sapp was injured as a result of this negligence. During his opening statement, Sapp's attorney stated OIS retreaded the tire that "disintegrated" on Sapp's truck, that expert testimony would demonstrate that an unrepaired puncture in the casing of the tire caused the tread to separate, and that due to this separation Sapp lost control of the truck and was injured. As to SRTT, Sapp's attorney asserted:

"Now at some point in time, we're not exactly sure, Stoney Ridge started to supply Consolidated Rail Corporation with tires. Now they also did some other services such as changing tires and that type of thing. The arrangement you'll hear is somewhat complicated but it doesn't make any difference in this case. They were dealing with Conrail.

"Prior to 1987, Conrail had a policy of purchasing only new tires for its maintenance of the way vehicles. Now these are vehicles which are used by employees to maintain the track, the roadbed and the tracks, railroad ties and that type of thing. Stoney Ridge was aware of that policy prior to 1987.

"In early 1987, Conrail purchased what it thought was two new tires from Stoney Ridge Truck Tire. It received two retreaded tires. One of the retreaded tires had gone through the channel which I described. It had been taken from Stoney Ridge for recapping. It was recapped by OIS and then returned. The retreaded tire, the subject of this case, was then put on a three-passenger pickup truck owned by Conrail by Stoney Ridge and that took place early in 1987.

"The plaintiff, Marty Sapp, was an employee of Conrail in 1987. He had been employed there for several years, and he had became a foreman. He and his crew were responsible for maintaining the tracks and roadbed. Marty was issued the truck with the retreaded tire by Conrail.

"Now the evidence will show that on June 30, 1987, Marty Sapp had completed his duties and was returning to a labor camp maintained by Conrail. While traveling on State Route 109 just south of Delta, Ohio, the right rear tire on the vehicle disintegrated and Marty slammed on the brakes of the truck. The truck went into a rotating skid and went into a ditch."

Viewing these facts to be proved in a light most favorable to Sapp, reasonable minds could differ as to whether they constitute a prima facie case of negligence against OIS and SRTT. Accordingly, the trial court did err in directing verdicts in favor of OIS and SRTT on Sapp's negligence claims at the conclusion of Sapp's opening statement.

■ With regard to the claims of breach of express warranty and implied warranty, Sapp's complaint alleges that the "subject tire was expressly and impliedly warranted to plaintiff, Martin W. Sapp, to be free of all defects and safe for operation * * *" and concludes that all named defendants are "strictly liable." The opening statement contains a single sentence related to warranties. That sentence reads "Now you'll hear that all of the defendants give some type of warranty in connection with the [retreaded] tires."

■ Even if viewed in a light most favorable to Sapp, reasonable minds could only conclude from the alleged facts that they do not constitute a cause of action predicated on breach of express warranty. From the few facts stated by Sapp, it is difficult to even discern whether he alleges a tort action for breach of express warranty or a contract action for breach of express warranty. These causes of actions are markedly different and require that specific facts be alleged as to each of the named defendants. See, *e.g., Rogers v. Toni Home Permanent Co.* (1958), 167 Ohio St. 244, 4 O.O.2d 291, 147 N.E.2d 612 (tort action for products liability based upon a breach of express warranty) and R.C. 1302.26 *et seq.* (contract action for breach of express warranty). Further, as noted by the court below, any cause of action based upon implied warranty in tort is now considered a strict products liability action. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 322, 4 O.O.3d 466, 468–469, 364 N.E.2d 267, 271. For these reasons, the trial court did not err in directing a verdict to OIS and SRTT on Sapp's warranty claims.

Sapp's first assignment of error is found well taken, in part, and not well taken in part.

Appellant's three remaining assignments of error address alleged deficiencies in the lower court's jury instructions. Because they are interrelated, these assigned errors shall be considered together.

Civ.R. 51(A) provides:

"At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Copies of such requests shall be furnished to all other parties at the time of making such requests. The court shall inform counsel of its proposed action upon the requests prior to their

arguments to the jury, but the court shall instruct the jury after the arguments are completed. The court need not reduce its instructions to writing.

"A party may not assign as error the giving or the failure to give any instruction unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

Ordinarily, requested instructions should be given if they are correct statements of the law as applied to the facts in a given case and where reasonable minds might reach the conclusion sought by the instruction. *Murphy v. Carrolton Mfg. Co.* (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828, 832. Nonetheless, a court will not instruct the jury where there is no evidence to support an issue. *Id.* Thus, in reviewing a record to determine the presence of sufficient evidence to warrant the giving of a requested instruction, an appellate court should ascertain whether there is evidence from which reasonable minds might reach the conclusion sought by the instruction. *Id.*

In his second assignment of error, Sapp asserts that the trial court erred in giving a jury instruction on assumption of the risk. Prior to trial, OIS requested, in writing, an instruction on assumption of the risk. Appellant objected. The trial court granted the request of OIS and provided the jury with the following instruction:

"Defendant claims that plaintiff assumed the risk of harm by driving the vehicle with the tire in question underinflated, by abusing the tire with excess speed while so underinflated.

"If you find that plaintiff has failed to prove a manufacturing defect in defendant's product or assuming you do so find, but fail to find that plaintiff has shown by a preponderance of the evidence that the manufacturing defect was the proximate cause of the injury of Martin Sapp or if you do so find, and you further find that defendant has provided by a preponderance of the evidence that the alleged assumption of risk and/or abuse or misuse of the tire by plaintiff, if any, was a proximate cause of the injury of the plaintiff, then your verdict must be for the defendant."

" * * *

"Ladies and gentlemen, the defendant claims that the plaintiff impliedly assumed the risk of injury. The plaintiff impliedly assumed the risk of injury if he had full knowledge—he had full knowledge of a condition that was obviously

dangerous to him or the risk was so obvious that you conclude by the greater weight of the evidence that he knew and understood it, and if he voluntarily exposed himself to that risk of injury."

"Defendant claims that plaintiff assumed the risk of harm by driving the vehicle with the tire in question underinflated, by abusing the tire with excess speed while so underinflated."

An otherwise strictly liable defendant has a complete defense if a plaintiff voluntarily and knowingly assumed the risk arising from a defect in a product. *Bowling v. Heil Co.* (1987), 31 Ohio St.3d 277, 282, 31 OBR 559, 563–565, 511 N.E.2d 373, 378. Nevertheless, this form of misconduct of a plaintiff, *i.e.,* negligence, is not a defense when it consists simply of a failure to discover a defect in a product or to guard against the possibility of the existence of the defect. Rather, the user or consumer must discover the defect, be aware of the danger and proceed to unreasonably make use of the product. *Id.* at 282–283, 31 OBR at 562–565, 511 N.E.2d at 377–378, quoting 2 Restatement of the Law 2d, Torts (1965) 356, Section 402A, Comment *n.* Assuming, *arguendo,* that Sapp established that the retreaded tire was defective, there is absolutely no evidence in the record of this case to demonstrate that Sapp knew of the defect in the tire, was aware of the danger, and proceeded voluntarily and unreasonably to make use of the tire. At best, there was some evidence offered to prove that Sapp knew the tire on his Conrail truck was a retreaded, not a new, tire. Unless it is assumed that all retreaded tires are defective, this fact alone does not indicate any awareness of a defect. Accordingly, there is no evidence upon which reasonable minds could conclude that Sapp assumed the risk occasioned by the allegedly defective product. Therefore, the trial court's charge to the jury on the defense of assumption of the risk was improper.

OIS asserts, however, that even if the charge was improper, the jury returned a general verdict without interrogatories. Thus, OIS argues that the two-issue rule prevents reversal of this case. Pursuant to two-issue rule, a general verdict, untested by interrogatories, may stand when one or more alternative grounds are properly submitted to the jury. *McCarthy v. Kasperak* (1981), 3 Ohio App.3d 206, 208, 3 OBR 234, 236–237, 444 N.E.2d 472, 475, citing *Sites v. Haverstick* (1873), 23 Ohio St. 626. However, the two-issue rule does not apply where there is a charge on an issue upon which there should have been no charge. *Ricks v. Jackson* (1959), 169 Ohio St. 254, 8 O.O.2d 255, 159 N.E.2d 225, paragraph four of the syllabus; *Avila v. Questor Juvenile Furniture Co.* (1991), 74 Ohio App.3d 597, 602, 599 N.E.2d 771, 775, fn. 1; *Mulloy v. Longaberger, Inc.*

(1989), 47 Ohio App.3d 77, 80–81, 547 N.E.2d 411, 414–415. We conclude, from a reading of the jury instruction on assumption of the risk, that the trial court confused this defense with that of misuse and abuse, that the jury was improperly charged on assumption of the risk, and that the two-issue rule is inapplicable. Sapp's second assignment of error is found well taken.

In his third assignment of error, Sapp argues that the trial court erred in giving an instruction on his alleged misuse or abuse of the retreaded tire. OIS contends that Sapp waived his right to raise this issue on appeal because he failed to object to this instruction prior to the time that the jury retired. We agree. See Civ.R. 51(A); *Cleveland Elec. Illuminating Co. v. Astorhurst Land Co.* (1985), 18 Ohio St.3d 268, 273, 18 OBR 322, 326–327, 480 N.E.2d 794, 799; *Patterson v. Ravens–Metal Product, Inc.* (1991), 72 Ohio App.3d 216, 226–227, 594 N.E.2d 153, 159–160. Moreover, Sapp could not prevail upon the doctrine of plain error because the record does not disclose that the charge on misuse or abuse resulted in a manifest miscarriage of justice. *Id.* at 226, 594 N.E.2d at 160. There was evidence offered at trial to establish that Sapp knew that the retreaded tires were on his vehicle in violation of company policy, that he drove the vehicle at an excessive speed, and that the tires may have been underinflated. Thus, sufficient evidence was offered to warrant an instruction on the issue of whether Sapp used the tire in a manner unforeseeable by OIS. *Bowling, supra,* 31 Ohio St.3d at 282, 31 OBR at 563–565, 511 N.E.2d at 378. Sapp's third assignment of error is found not well taken.

Sapp's fourth assignment of error challenges the trial court's denial of his written request for an instruction on OIS's alleged failure to warn of the effects of underinflation, overloading or excessive speed on retreaded tires.

A plaintiff, may, in a strict products liability case, seek recovery for a failure to warn or to warn adequately. *Crislip v. TCH Liquidating Co.* (1990), 52 Ohio St.3d 251, 257, 556 N.E.2d 1177, 1183. However, he must prove "that the manufacturer knew, or should have known, in the exercise of ordinary care, of the risk or hazard about which it failed to warn." In such a case, the failure to warn of unreasonable dangers associated with the product constitutes the defect. Thus, unless the item sold is dangerous to an extent beyond that contemplated by the ordinary consumer, a duty to warn does not arise. *Id.* at 257, 556 N.E.2d at 1183, quoting 2 Restatement of the Law 2d, Torts, *supra,* at 352, Section 402A, Comment *i.* Further, a seller is not required to warn with respect to a product when the danger or potential for a danger is generally known or recognized. *Taylor v. Yale & Towne Mfg. Co.* (1987), 36 Ohio App.3d 62, 65, 520 N.E.2d 1375,

1378, quoting 2 Restatement of the Law 2d, Torts, *supra*, 353, Section 402A, Comment *j*.

 Even in assuming that a failure to warn was properly pled in the present case, there is no evidence in the record which would warrant a jury instruction on a duty to warn. Sapp contends that the duty to warn is based on the fact that overloading, underinflation and excessive speed may cause tread separation on a retreaded tire. The evidence in the record suggests that the tread on any tire, either new or retreaded, may separate as the result of such abuse and that, generally, the separation of a portion of the tread from a tire casing does not cause a driver to lose control of his motor vehicle. In addition, requiring warnings on OIS retreaded tires would impose a burden on the manufacturer to foresee all potential abuse and misuse of its product. That is, the danger which arises is not associated with the product but, rather, is the result of the conduct of the consumer. We therefore conclude that the dangers involved in overloading, underinflating and traveling at excessive speed are generally known to tire users and that a manufacturer of retreaded tires is not required to foresee and warn of dangers arising from the consumer's abuse or misuse of its product. Consequently, the trial court did not err in failing to instruct the jury on a duty to warn. Sapp's fourth assignment of error is found not well taken.

We now turn to OIS's "cross-appeal," which is, in reality, a cross-assignment of error asserted by an appellee in the interest of preventing the reversal of a case. See R.C. 2505.22; *Seringetti Constr. Co. v. Cincinnati* (1988), 51 Ohio App.3d 1, 553 N.E.2d 1371.

 OIS maintains that the trial court erred in failing to grant its motion for a directed verdict at the close of all evidence because Sapp failed to present "substantial evidence of probative value" on the issue of whether a defect (a through and through puncture) existed at the time the retreaded tire left the hands of OIS.

Civ.R. 50(A)(4) provides:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

In determining the motion for a directed verdict, the court does not weigh the evidence or question the credibility of the witnesses. *Blair v. Property Mgt. Consultants* (1987), 40 Ohio App.3d 103, 531 N.E.2d 752. Civ.R. 50(A)(4) requires the court only to determine the existence of *any* evidence of probative value in support of the party's claim. *Coleman v. Excello–Textron Corp.* (1989), 60 Ohio App.3d 32, 572 N.E.2d 856.

In the case at bar, Sapp's expert witness, Jordan, testified that a through and through puncture existed in the tire at the time that OIS retreaded it and the defective tire was the cause of Sapp's accident. Sapp testified that he heard a loud noise at the rear of the truck and that it jerked. Ignoring, as required by Civ.R. 50(A)(4), the credibility of this testimony, it is probative evidence that the retreaded tire was defective at the time it left the hands of OIS. That is, reasonable minds could differ as to whether a manufacturing defect existed in the tire at the time it left OIS, which defect proximately caused the accident. The cross-assignment of error of OIS is found not well taken.

The judgment of the Lucas County Court of Common Pleas is affirmed in part and reversed in part. This cause is remanded to the trial court for further proceedings not inconsistent with this judgment only as to the negligence claims of Sapp against OIS and SRTT and the products liability claim against OIS. All other judgments were not appealed by Sapp and are, therefore, the law of the case. Costs of this appeal are to be assessed against OIS Tire, Inc., and Stoney Ridge Truck Tires.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

GLASSER, P.J., MELVIN L. RESNICK and SHERCK, JJ., concur.