SCHWENK, APPELLEE, *v.* SCHWENK, APPELLANT.

(No. 43769—Decided March 18, 1982.)

Mr. Sheldon D. Schecter, for appellee.
Mr. Joseph B. Rose, III, for appellant.

PARRINO, J. Jacqueline Schwenk, defendant-appellant, appeals the judgments entered in the Court of Common Pleas of Cuyahoga County, Domestic Relations Division, relative to the divorce action instituted by plaintiff-appellee, Willard L. Schwenk. The primary issue in this appeal is whether the trial court abused its discretion in denying appellant's motion for a new trial based upon newly discovered evidence. We affirm.

This is the second divorce trial between these parties. In the previous case appellant filed a complaint for divorce and alimony on April 23, 1976. Appellant subsequently withdrew her complaint, but the case proceeded on a cross-claim for divorce which had been filed by appellee. The trial court granted appellee a divorce on the grounds of gross neglect of duty and divided the marital property. On appeal this court reversed, holding that there was insufficient evidence of gross neglect of duty. We held further that the trial court had erred in dividing the marital property and in determining alimony without receiving evidence of the present fair market value of two parcels of real estate and the net earnings of a business operated by appellee. *Schwenk* v. *Schwenk* (Nov. 1, 1979), Cuyahoga App. No. 39484, unreported.

Appellee filed a complaint in the case at bar on November 8, 1979, requesting an order for divorce and division of property. Among the asserted grounds was continuous separation for over two years. Appellant filed a motion for alimony *pendente lite* with an affidavit which indicated that she had no employment or other income.

This case was heard before a referee on June 10, June 12, July 16 and September 3, 1980.[1] The referee made findings of fact in his report from which

---

[1] Appellant has failed to provide this court with a transcript of the hearings on July 16 and September 3 as she is required to do under App. R. 9 (B) and 10(A). However, we are able to resolve the issues of this appeal from the partial transcript before us.

we have gathered the facts set forth below.

During the course of the marriage appellant had deposited large sums of money in numerous bank accounts under various names. Due to the fact that both parties had worked throughout the marriage, these deposits constituted marital assets. During the first few months after appellant had filed her complaint in the previous proceedings she withdrew money in checking, savings, and credit union accounts; redeemed certificates of deposit; and sold stock. Thus she came into possession of over $120,000 in marital assets. Appellant testified, with a demeanor which the referee found to be suspicious, that she did not remember making the withdrawals in question or else was no longer in possession of the money. She testified that she either spent the money on necessities or burned it. Contrary to the assertion in her alimony affidavit that she had no income, appellant acknowledged at trial that she received a pension of $323 per month and was employed as a substitute school bus driver.

When appellee separated from appellant in April 1976, he took numerous items from the marital residence. Appellant listed these items, which she indicated had a value of over $56,000. The valuations were based upon appellant's personal determination of replacement cost, without regard to the original cost or depreciation in value. Among these items were an antique bedroom set which appellant valued at $5,000; a gold clock which appellant valued at $700; and a mink coat which, although it had been purchased in 1958 for $3,500, appellant valued at $9,000. Appellant testified that the property which appellee had left her had little or no value. The referee found appellant's valuations of property to be unbelievable and found her testimony as to her living expenses to be exaggerated.

The referee recommended that the divorce be granted on the ground of separation for over two years. The referee awarded appellant all the interest in the funds which she had withdrawn and which remained unaccounted for, which were determined to amount to $120,728.67. The referee also awarded appellant the bedroom set, the gold clock, and the mink coat which, relying on appellant's own valuations of these items, were worth $14,700. Thus appellant was awarded a total of $135,428.67 in marital assets. Appellee was awarded both parcels of real estate, his retirement account and life insurance policies, and all the cash and stocks which had been accounted for, for a total award of $125,160.00 in marital assets.[2] Each party was to retain all other items of property in his or her name or possession. Appellant filed objections to the referee's report. In an entry which was prepared on February 19 and filed on February 23, 1981, the trial court overruled appellant's objections without a hearing, approved and journalized the referee's report, and directed appellee to prepare a proposed journal entry. The judgment entry was duly prepared, approved, and signed. On March 5, 1981, the judgment entry was filed for journalization.

On March 18, 1981, counsel for appellant filed a timely motion for new trial indicating by way of affidavit that appellant had been involved in a serious automobile accident on February 23, 1981,[3] and was hospitalized in a coma. The affidavit concluded that because of

---

[2] The parties stipulated the value of the two parcels of real estate. Appellee's business had been terminated by the time of the second trial and thus was not a factor in the property division.

[3] Although the affidavit fails to disclose the exact time of the accident on February 23, the affidavit acknowledges that the accident occurred "after the [trial court's] acceptance of the referee's report."

her injuries and need for extensive therapy appellant was no longer able to support herself. The trial court denied appellant's motion for new trial on March 30, 1981. From this judgment entry appellant has filed a timely appeal, raising two assignments of error.

Appellant's first assignment of error states:

"I. The trial court erred in denying appellant's motion for a new trial, filed after entry of judgment, where it was shown by affidavit that appellant had been seriously and permanently injured in an automobile accident prior to entry of judgment and the judgment entry was substantially based on appellant's ability to earn a living and support herself."

This assignment of error is not well taken. The issue is whether appellant presented newly discovered evidence sufficient to warrant a new trial. We conclude that the trial court did not err in refusing to grant a new trial.

Initially, we recognize our duty to limit the scope of our review of this issue as follows:

"The granting or refusing of a new trial on the ground of newly discovered evidence rests largely within the sound discretion of the trial court; and when such discretion has not been abused, reviewing courts should not interfere." *Taylor* v. *Ross* (1948), 150 Ohio St. 448 [38

O.O. 314], paragraph two of the syllabus; *Domanski* v. *Woda* (1937), 132 Ohio St. 208 [7 O.O. 462], paragraph two of the syllabus.

Civ. R. 59(A)(8) permits a new trial on the ground of "[n]ewly discovered evidence, material for the party applying, which with reasonable diligence he could not have discovered and produced at trial." However, as a general rule, matters happening after trial cannot be considered "newly discovered evidence" upon which to justify the granting of a new trial. *Assad* v. *State Dept. of Liquor Control* (Franklin App. 1952), 70 Ohio Law Abs. 185; *Hutt* v. *Young* (1934), 47 Ohio App. 390; *Cunningham* v. *Cleveland Consol. Bottling Works Co.* (1920), 12 Ohio App. 309.

In the case at bar, the accidental injury which constituted the newly discovered evidence occurred after the court had reached and announced its decision but before the court formally had entered judgment. Appellant argues that the injury, having occurred prior to the entry of judgment, should be considered as newly discovered evidence. We disagree.

In construing the term "newly discovered evidence" as used in Civ. R. 59(A)(8), we look to the opinions of federal courts in construing the term under Fed. R. Civ. P. 59 and 60.[4] In *Prostrollo* v.

---

[4] Fed. R. Civ. P. 59(a) provides, in part:

"A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. * * *".

"Newly discovered evidence" is a ground for new trial under Fed. R. Civ. P. 59. 11 Wright & Miller, Federal Practice and Procedure: Civil, Section 2808, at pages 54-60 (1973).

Fed. R. Civ. P. 60(b)(2), which is substan-

tively identical to Ohio Civ. R. 60(B)(2), provides:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: * * * (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b) * * *."

The same standard applies to motions on the ground of newly discovered evidence whether they are made under Fed. R. Civ. P. 59(a) or 60(b)(2). *United States Fid. & Guar. Co.* v. *Lawrenson* (C.A. 4, 1964), 334 F.2d 464, certiorari denied (1964), 379 U.S. 869.

*Univ. of South Dakota* (D.S.D. 1974), 63 F.R.D. 9, university students had instituted an action challenging a university regulation which required single freshman and sophomore undergraduate students to live in dormitories. Trial took place on November 23, 1973, and the trial court entered judgment in favor of the students on January 21, 1974. Thereafter, the university sought relief from judgment under Fed. R. Civ. P. 60(b)(2) on the ground of newly discovered evidence consisting of the 1973 fall semester grade-point averages for on and off-campus students. The trial court noted that the semester was not over until mid-December 1973, which was subsequent to trial but prior to entry of judgment, and that the grade averages were not compiled until several weeks after entry of judgment. The court held that the grade-point averages did not constitute "newly discovered evidence" because they were not in existence at the time of trial. The court stated:

"* * * There can be no Rule 60(b)(2) relief for evidence which has only come into *existence* after the trial is over, for the obvious reason that to allow such a procedure could mean the perpetual continuation of all trials. 'Newly discovered evidence' under Rule 60(b) refers to evidence of facts in existence at the time of the trial of which the aggrieved party was excusably ignorant. * * *" (Emphasis sic.) *Prostrollo* v. *Univ. of South Dakota, supra,* at page 11.

In *Campbell* v. *American Foreign S.S. Corp.* (C.A. 2, 1941), 116 F.2d 926, certiorari denied (1941), 313 U.S. 573, the defendant filed a motion for new trial under Fed. R. Civ. P. 59 on the ground of newly discovered .evidence after the allegedly disabled plaintiff had become gainfully employed subsequent to trial. The trial court denied the motion for new trial. The appellate court found no abuse of discretion, stating:

"* * * The facts alleged in support of the motion do not constitute 'newly discovered evidence' within the rule. That phrase refers to evidence of facts in existence at the time of the trial, of which the aggrieved party was excusably ignorant. If it were ground for a new trial that facts occurring subsequent to the trial have shown that the expert witnesses made an inaccurate prophecy of the prospective disability of the plaintiff, the litigation would never come to an end. * * *" *Campbell* v. *American Foreign S.S. Corp., supra,* at page 928.

Having considered these authorities, we hold that a trial court in its sound discretion may decline to grant a motion for a new trial on the ground of newly discovered evidence where the events in question occurred after trial and subsequent to the court's announcement of decision but prior to entry of judgment. Trial courts must have this discretion so that litigation may come to a reasonable end.

We conclude that the trial court in the case at bar acted within its sound discretion in overruling the motion for new trial. Our conclusion is reinforced by our finding, set forth in our discussion of the second assignment of error below, that the division of property is supported by the evidence and is fair and equitable. For, even if appellant's post-trial injury were to be considered newly discovered evidence, appellant has failed to demonstrate that this evidence would have rendered the division of property unfair or inequitable. In order to be entitled to a new trial on the ground of newly discovered evidence the movant must demonstrate that the new evidence is such as will probably change the result if a new trial is granted. *Sheen* v. *Kubiac* (1936), 131 Ohio St. 52 [5 O.O. 365]. In light of the fact that appellant continues to receive a monthly pension of $323 and has been awarded $135,428.67 in marital assets, appellant has failed to demonstrate that the evidence of her post-trial injury probably would have en-

titled her to a greater portion of the marital assets.

Since the division of property was fair and equitable and the events which allegedly constituted newly discovered evidence occurred after trial and subsequent to the court's announcement of decision, we conclude that the trial court properly overruled appellant's motion for new trial. Accordingly, the first assignment of error is overruled.

Appellant's second assignment of error states:

"II. The trial court failed to make an equitable division of property and the division of property it did make is against the manifest weight of the evidence and is an abuse of discretion."

This assignment of error is not well taken. The issue is whether the division of marital property was an abuse of discretion where appellant's share of the property consisted primarily of funds which had been withdrawn from joint accounts by appellant during the course of the marriage but which were unaccounted for at the time of trial.[5] We find no abuse of discretion.

The trial court has broad discretion in determining division of marital property so long as the division is equitable and is arrived at upon consideration of the factors enumerated in R.C. 3105.18.[6] *Cherry v. Cherry* (1981), 66 Ohio St. 2d 348 [20 O.O.3d 318]. In the case at bar, the referee's report which the trial court adopted expressly considered each factor enumerated in R.C. 3105.18. The referee's findings of fact are supported by the transcript before us.

Whether appellant presently is in possession or control of the $120,728.67 in missing marital assets is a question of fact which was determined by the referee acting as the trier of fact. The referee based his finding on the evidence that appellant had routinely concealed money in various accounts and under various names during the course of the marriage; that appellant was by nature a frugal, meticulous person; that the funds were withdrawn shortly after appellant had filed for divorce; and that appellant was unable to give a credible accounting at trial of the manner in which she had disposed of these funds. We are not persuaded that the referee's finding is manifestly contrary to the natural and reasonable inferences which may be drawn from the evidence; rather, we conclude that the referee's finding is supported by competent, credible evidence.

---

[5] Appellant also argues, parenthetically, that the referee abused his discretion in relying on her valuations of the bedroom set, the gold clock, and the mink coat after expressly finding her valuations to be unbelievable. We conclude that since appellant has testified under oath as to the value of the items in question she may not assert on appeal that she was prejudiced by the referee's acceptance of her testimony as true.

[6] R.C. 3105.18 provides, in part:

"(B) In determining whether alimony is necessary, and in determining the nature, amount, and manner of payment of alimony, the court shall consider all relevant factors, including:

"(1) The relative earning abilities of the parties;

"(2) The ages, and the physical and emotional conditions of the parties;

"(3) The retirement benefits of the parties;

"(4) The expectancies and inheritances of the parties;

"(5) The duration of the marriage;

"(6) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;

"(7) The standard of living of the parties established during the marriage;

"(8) The relative extent of education of the parties;

"(9) The relative assets and liabilities of the parties;

"(10) The property brought to the marriage by either party;

"(11) The contribution of a spouse as homemaker."

*C. E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261]. We find no prejudicial error in the determination of this division of property and we conclude that the division was fair and equitable. Accordingly, the second assignment of error is overruled.

Since neither assignment of error is well taken, the judgment of the trial court is affirmed.

*Judgment affirmed.*

DAY, P.J., and STILLMAN, J., concur.

STILLMAN, J., retired, of the Eighth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.