FERGUS, Appellant,

v.

FERGUS, Appellee.

[Cite as *Fergus v. Fergus* (1997), 117 Ohio App.3d 432.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 94 C.A. 94.

Decided Jan. 17, 1997.

*Maureen A. Sweeney*, for appellant.

*Mary Jane Stephens*, for appellee.

GENE DONOFRIO, Judge.

This cause comes on timely appeal from a decision of the Mahoning County Common Pleas Court, Division of Domestic Relations, by an assigned judge, granting both plaintiff-appellant, William P. Fergus, and defendant-appellee, Judith A. Fergus, a divorce on the grounds of incompatibility and ordering a separation of property between the parties.

Appellant filed a complaint for divorce on October 16, 1992. On October 22, 1992, appellee filed an answer and counterclaim. Appellant was ordered to pay spousal support *pendente lite* on February 2, 1993. Pursuant to a motion for contempt filed by appellee and a motion to modify filed by appellant, the trial court on June 28, 1993 modified its order of February 2, 1993 by terminating spousal support, effective July 10, 1993.

Trial to the court was conducted on February 11, 1994 and February 14, 1994. It was agreed between the court and the parties that no character or corroborating witnesses would be needed, as each accepted incompatibility as the basis for the divorce.

A proposed opinion was submitted to counsel for both parties. After each party filed motions for modification, on April 26, 1994, the trial court filed its final opinion and judgment entry. Thereafter, appellant's motion for new trial was overruled on May 12, 1994. Appellant timely filed a notice of appeal, and this court granted a temporary stay pending a hearing. On June 21, 1994, this court issued a conditional stay requiring appellant to convey to the appellee the Virginia condominium, a certain I.R.A. owned by appellant, and marital furnishings. Appellant was to continue making spousal support, continue payments on a VISA account, set up a joint escrow account in the amount of the lump-sum judgment and post bond in the amount of $23,933, which represents the amount needed for appellee to repurchase her public service credit. A stay was ordered as to certain antiques valued at $26,000.

During the appeal, both parties hired new counsel.

Appellee has filed a motion in contempt for failure of appellant to comply with the conditions of the stay order. On December 29, 1995, appellant filed an affidavit attesting to his compliance with this court's stay order.

On January 2, 1996, appellee filed a motion to dismiss, arguing that appellant had failed to pay the maintenance fee on the Virginia condominium, and had not made payments into the bank account as required at $755 each month until the total reached $65,000. The motion to dismiss was set for hearing at the same time as oral argument on the merits.

Appellant presents three assignments of error:

"Argument of Law No. 1

"The trial court abused it discretion in determining the present–day vlaue [*sic*] of plaintiff–appellant's pension."

"Argument of Law No. 2

"The trial court abused its discretion by not considering certain marital property which had disappeared from the marital residence."

"Argument of Law No. 3

"The trial court abused its discretion in determining the value of the marital residence which was owned by plaintiff–appellant prior to the marriage."

■ Under the first assignment of error, appellant argues that the trial court's failure to consider the tax consequences constituted an abuse of discretion in awarding appellant's pension plan as it did.

We disagree. The parties to this proceeding were married on January 11, 1980. During the entire time of the marriage, appellant was paying into the Public Employees Retirement System. After the marriage, appellee cashed in her pension of $13,960 and opened a Paine-Webber account, which now has a current value of $5,000. The difference was considered dissipated marital assets used for the benefit of both parties during the marriage. Appellee worked only briefly after the marriage and had no pension. During the marriage, the parties operated an antique business, leading to acquisition of many collectibles which were later determined to be missing. Following the divorce, appellee was reemployed in the public sector, and as part of the divorce settlement appellant was ordered to pay $23,933 to repurchase the appellee's years-of-service credit, which would greatly enhance her retirement benefits.

In regard to appellant's pension, the parties stipulated in court that it had a marital present value of $191,800:

"Mr. Fox: Roman Numeral II on the next page, Your Honor, the parties further stipulate that the present value of Plaintiff, Mr. Fergus's P.E.R.S., marital portion of this P.E.R.S., is $191,800; that's $191,800. And again, I emphasize that's the—that's the value accumulated during the marriage of Mr. and Mrs. Fergus."

Under the final judgment of divorce, the court decreed:

"(2) The husband has a PERS pension; he is 58 years of age and in his 24th year of employment and in mid-term in an elected office as a County Engineer. Said pension had a stipulated marital present value of $191,800. State law contraindicates the Court from issuing a Qualified Domestic Relations Order or otherwise dividing a state PERS pension. The Ohio Supreme Court suggests that the Court offset the value of that pension by the granting of other property or property rights to the other spouse. The Court has considered by [sic] has taken no action relative to tax consequences upon receipt of pension. Each party, upon sale of assets or upon receipt and distribution of pension, would have some tax consequences. However, it is impossible for the Court to anticipate those, and they are not of an unusual nature."

The trial court then ordered appellant to repurchase appellee's credit for prior years of public service so that her pension value would increase. Further division of property was then made on the known increase in value of appellee's pension.

Even with the reevaluation of appellee's repurchased pension, the trial court found that appellant's share of marital assets totaled approximately $222,960 and appellee's share equalled approximately $84,652. In order to comply with the law requiring equitable distribution of property, the trial court ordered appellant to pay appellee $65,000 either in a lump sum payment or over a ten-year period at an interest rate of seven percent, making monthly payments of $755.

The seminal case in making an equitable distribution of unmatured retirement benefits is *Hoyt v. Hoyt* (1990), 53 Ohio St.3d 177, 559 N.E.2d 1292, 1293–1294. In *Hoyt*, paragraphs one and two of the syllabus, the court held:

"1. When considering a fair and equitable distribution of pension or retirement benefits in a divorce, the trial court must apply its discretion based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension or retirement plan, and the reasonableness of the result.

"2. The trial court should attempt to preserve the pension or retirement asset in order that each party can procure the most benefit, and should attempt to disentangle the parties' economic partnership so as to create a conclusion and finality to their marriage."

The decision of the trial court abided by these principles in structuring the award as it did. Based on the agreed valuation of known marital assets, the trial court made an equitable distribution when viewing the property division in its entirety. *Briganti v. Briganti* (1984), 9 Ohio St.3d 220, 9 OBR 529, 459 N.E.2d 896.

In this case there was no immediate distribution of pension benefits ordered. Rather, the trial court identified appellee's property interest in appellant's pension. To protect that interest as well as provide for an equitable distribution of marital assets, the court adjudicated that appellee was entitled to $65,000 payable in lump sum or over a ten-year period.

"Whether or not the value of a party's pension and retirement plans which are not immediately terminated should be reduced by estimated future tax consequences on distribution and, if so, by how much, are factors best left to the discretion of the trial court after hearing all the evidence and any expert testimony as to those tax consequences." *Noll v. Noll* (1989), 55 Ohio App.3d 160, 163–164, 563 N.E.2d 44, 48.

"Tax consequences of property division and sustenance alimony awards are proper considerations for the court, so long as those consequences are not

speculative." *Day v. Day* (1988), 40 Ohio App.3d 155, 159, 532 N.E.2d 201, 205–206.

In this case, the trial court specifically recognized that the sale of an asset or receipt of a pension benefit would have some tax consequence, but that "it is impossible for the Court to anticipate those, and they are not of an unusual nature."

The tax consequences being speculative in nature, the trial court need not consider them. *Day, supra.*

Furthermore, the only witnesses who testified in this proceeding were appellant, appellee, and a jeweler, who appraised items of jewelry. Appellant presented no evidence, expert or otherwise, on this issue.

The trial court acted within its discretion in consideration of appellant's pension and in fashioning an equitable distribution of marital property.

The first assignment of error is without merit.

█ In his second assignment of error, appellant argues that it was an abuse of discretion for the trial court not to consider the value of certain missing marital property in making the property settlement.

Paragraph 13 of the court's order recites:

"(13) Plaintiff's Exhibit 8 lists a large quantity of items which are 'missing.' There has not been any evidence by a preponderance to indicate who has these items or where these items are located; the parties even disputed the value of some of the missing items. Although the Court acknowledges that Revised Code § 3105.171 deals with concealment of assets by a spouse, this Court is unable to conclude which of the parties has concealed the assets or whether even some of the assets are, in fact, concealed. The Court, therefore, refuses to make any further orders relative thereto, unless the same be located and further application be made to the Court."

In addition to Plaintiff's Exhibit 8, which is appellant's list of missing property with assigned values, there is also Plaintiff's Exhibit 4, which is a list of missing antiques and collectibles. A good number of the items questioned as missing were located at the house by appellant and his son. Appellant testified as follows:

"Q   Now, have you gone through Plaintiff's Exhibit Number 4 to determine whether these items are where Judy signified that she had located them?

"A   I believe, yes, this is it, yeah.

"Q   Okay. And those items that have question marks beside there, you agree that you don't know where they are at?

"A   Some of them we found as went through.  When we were looking, we found a lot of them.

"Q   Who is 'we?'

"A   My son and I, and we found most of them with Mr. Prater.

"Q   You found them at the house or where?

"A   At the house, yes.

"Q   Okay.  Well then, maybe—

"A   A lot of them."

In regards to Plaintiff's Exhibit 8, appellee was questioned as to each exhibit listed on the index of missing personal property.  She admitted to having certain items of jewelry, china, and furs in her possession.  She further testified that certain items had been sold.  As to the remainder she had no knowledge as to the whereabouts of the missing property, but she testified they were not in her possession.

It was held in *Hirschberger v. Hirschberger* (Apr. 27, 1990), Lucas App. No. L–89–018, unreported, 1990 WL 52886:

"A domestic relations court's distribution of marital property is derived solely from the evidence offered by the litigants.  *Stetler* [*v. Stetler* (1982)], [6 Ohio App.3d 29, 6 OBR 138, 452 N.E.2d 344] *supra*.  See also *Craig v. Craig* (Jan. 20, 1989), Portage App. No. 1922, unreported [1989 WL 4268].  The trial court was not required to conduct an independent investigation of the nature and extent of the parties' property holdings.  Furthermore, it is not this court's role to conduct an item by item review of the marital assets and liabilities.  Our review is limited to the equity, *i.e.*, fairness, of the property distribution in its entirety.  *Briganti v. Briganti* (1984), 9 Ohio St.3d 220, 222 [9 OBR 529, 531–532, 459 N.E.2d 896, 898]."

Another case addressing missing marital assets is *Schwenk v. Schwenk* (1982), 2 Ohio App.3d 250, 2 OBR 272, 441 N.E.2d 631.  In *Schwenk*, one party during the marriage had deposited large sums of money in different accounts under various names.  In the first few months after the divorce was filed, the wife withdrew funds from checking, savings, and credit union accounts, redeemed certificates of deposit and sold stock.  She testified before a referee that she did not remember making withdrawals and was no longer in possession.  The referee determined that the wife had withdrawn $120,728.67 and included that amount in the wife's share of marital property.

The *Schwenk* court went on to say:

"The trial court has broad discretion in determining division of marital property so long as the division is equitable and is arrived at upon consideration of the factors enumerated in R.C. 3105.18. *Cherry v. Cherry* (1981), 66 Ohio St.2d 348 [20 O.O.3d 318, 421 N.E.2d 1293]." *Id.* at 254, 2 OBR at 277, 441 N.E.2d at 635.

The trial court in this case specifically referred to R.C. 3105.18 and 3105.171 relative to an equitable division of marital and separate property.

Based on the totality of evidence presented, we find no abuse of discretion in the trial court's equitable distribution of known marital property.

Furthermore, the trial court left open for future distribution missing property which may later be found.

Moreover, postjudgment pleadings reflect that appellant filed a police report on the missing property.

Based on a comprehensive and detailed review of the record, including all exhibits introduced in evidence, this court finds that the trial court did not abuse its discretion in ordering the distribution of property as it did.

Appellant's second assignment of error is without merit.

Appellant argues in his third assignment of error:

"The trial court abused its discretion in determining the value of the marital resident which was owned by plaintiff–appellant prior to the marriage."

The lower court found that the marital residence has a (stipulated) fair market value of $70,000, and that there are mortgages securing $16,500 owed to appellant's former spouse and approximately $21,000 owed to Society Bank, creating a present equity of $32,500 in the home. The court went on to state:

"The Court specifically [finds] that $16,500 of said equity is premarital property. The Court finds the property to have a marital equity of $16,000 which, by reason of the mortgages payable and the premarital interest of the husband, be, and hereby is awarded to him."

Appellant sets forth that he owned the home prior to the marriage, that appellee did not act in any positive manner to assist with the increase in equity of the residence, and that any increase in value to the home was solely the result of the housing market and inflation. Appellant contends that the home therefore remained separate nonmarital property and that the trial court abused its discretion in finding $16,000 to be marital equity.

R.C. 3105.171 states:

"(6)(a) 'Separate property' means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:

" * * *

"(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;

"(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage."

However, "[a] trial court, in determining the division of property pursuant to the factors contained in R.C. 3105.18 and all other relevant factors, does not abuse its discretion by apportioning the appreciation in value of nonmarital property as a marital asset, where significant marital funds and labor are expended to improve and maintain such property." *Worthington v. Worthington* (1986), 21 Ohio St.3d 73, 21 OBR 371, 488 N.E.2d 150.

It is not in dispute that the marital residence was premarital asset of appellant. The parties had stipulated that the current fair market value of the residence is $70,000, but were in disagreement as to the premarital value of the home. The lower court correctly found the residence to have approximately $32,500 of present equity due to the $16,500 and $21,000 mortgages. The lower court then made a conclusory statement that $16,500 of the equity was premarital property and $16,000 was marital equity. The lower court's findings are not supported by the record.

Appellant testified that the only improvement to the home during the marriage was the remodeling of the family room some time between 1989 and 1991, at a cost of approximately $6,000. Appellant further testified that the money to finance the improvements came from a loan on his life insurance policy. The court found there to be $16,000 of marital equity in the home, only $6,000 of which is evident from the record. It is not apparent from the record whether the $6,000 improvement to the family room resulted in a $16,000 appreciation to the home. The trial court did not specifically find, and the record does not reveal, that significant marital funds and labor were expended to improve and maintain the property. See *Worthington, supra.* In fact, $10,000 of the $16,000 the court found to be marital equity could have been the result of "[p]assive income and appreciation acquired from separate property," and thus separate property. R.C. 3105.171(A)(6)(a)(iii).

Appellant's third assignment of error has merit and is sustained.

The judgment of the trial court is hereby affirmed in part and reversed in part, and this matter is remanded to the trial court for further proceedings according to law and consistent with this opinion. Upon remand, the trial court is

instructed to reevaluate and determine the marital equity in the marital residence, to cite its reasons for its determination, and to distribute it accordingly.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

JOSEPH E. O'NEILL, P.J., concurs.

Cox, concurs in part and dissents in part.

Cox, Judge, concurring in part and dissenting in part.

I must respectfully dissent from the majority on the first assignment of error.

It is readily apparent why the trial court ruled the way it did and why the majority is upholding that ruling. The testimony states that the parties stipulated that the appellant's pension had a present value of $191,800.

The parties were married in 1981 and divorced in 1992. The appellee, prior to her marriage, was also a government employee but drew her money out of the P.E.R.S. During the course of the divorce, when appellee again got a government position, appellant was ordered to pay her $23,933 to replace the $13,960 she had withdrawn.

Once the court ordered the appellant to provide a pension for the appellee the court should also have determined what now is the present marital value of that pension. Set that amount off against appellant's pension and the difference, if any, should be split.

It strikes me as incongruous that, although both parties have pensions, only one is subject to a valuation and a distribution made therefrom. Possibly the lawyers did not bring this to the trial judge's attention, or the trial got so bogged down in minutiae over who took what piece of property and what that piece of property was worth that the issue got lost.

We, on the court of appeals, have the privilege of being out of the heat of combat and have sufficient time to read the record and, as some would say, engage in 20–20 hindsight.

I would remand this matter to the trial court on this issue to see if the calculation, easily made, would change the trial court's decision in the distribution of marital assets.

I concur in the balance of the opinion.