DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Fulton County Court of Common Pleas, Domestic Relations Division, in which the trial court granted a divorce to appellant, Donna S. McCloud, and appellee, Gregory A. McCloud, allocated parental rights and responsibilities for the parties' three minor children, and determined and distributed the marital assets and debts. On appeal appellant sets forth the following as her sole assignment of error:
 {¶ 2} "Assignment of Error No. 1
 {¶ 3} "The trial court erred and abused its discretion in making the property division in the Judgment Entry of Divorce."
 {¶ 4} The relevant, undisputed facts are as follows. Appellant and appellee were married on January 4, 1990. Three children were born of the marriage. Appellee filed a complaint for divorce on November 6, 2003, and appellant filed an answer and counterclaim on November 13, 2003. Initially, both parties sought custody of the three minor children. On August 6, 2004, with the parties' mutual consent, the trial court designated appellee as the residential parent of the parties' oldest son and appellant as the residential parent of the parties' younger son and daughter. Appellant was also awarded the parties' 2001 Dodge Durango. Neither party was ordered to pay spousal or child support. All other matters were continued pending the final divorce hearing on December 17, 2004.
 {¶ 5} At the divorce hearing, testimony was presented by appellee and appellant as to the nature and extent of the parties' marital property and respective incomes and debts. On December 28, 2004, the trial court filed a judgment entry in which it found that appellee, a laborer who was on disability due to a heart condition, had an annual gross income of $15,000 and appellant, a student and part-time waitress, had an annual gross income of $25,000. The trial court further found that appellant's father "loaned the parties $3,000.00 as a down payment on the marital home, and $10,000.00 on an investment in a Michigan business, which currently has no value." The trial court also found that appellant "took approximately $10,000.00 in marital assets with her when she left * * *, some of which was used to pay marital debt, and approximately $7,000.00 of which cannot be accounted for, but presumably was used for maintenance and living expenses." The trial court also noted that appellee was receiving financial help from relatives "to make ends meet."
 {¶ 6} After making the above findings, the trial court concluded that the parties' debts "eclipsed" their assets by more than $20,000. Thereafter, the trial court allocated the parties' assets and debts as follows. Items of value awarded to appellee included a platinum watch ($4,000); personal and/or household goods ($3,000); and shares of Wendy's and CISCO stock ($1,500). Debts allocated to appellee included negative equity in the marital home ($6,773); one-half of the remaining mortgage for a repossessed Ford van ($2,008.50); losses incurred through a failed Michigan business venture ($10,000); and a large portion of the parties' unsecured credit card debt ($10,338.37). The court found appellee's gun collection (valued at $5,000) was a premarital asset and awarded it to him on that basis. The trial court also awarded appellee his father's war medals and other personal mementoes and two term life insurance policies, after finding those items had no value.
 {¶ 7} Items of value awarded to appellant included personal and/or household goods ($3,000); and the Dodge Durango ($13,000). Debts assigned to appellant included one-half the mortgage for the repossessed Ford van ($2,008.50); the outstanding mortgage on the Durango ($13,000), and the remaining portion of the parties' unsecured credit card debt ($2,800).
 {¶ 8} After offsetting the trial court's allocations of marital property and outstanding debt, appellee was assigned a negative equity of $20,669.87 and appellee was assigned a negative equity of $1,808.50. Appellant filed a timely notice of appeal on January 25, 2005.
 {¶ 9} On appeal, appellant does not challenge the trial court's conclusion that the parties' marital assets are "eclipsed" by their debts, and apparently does not dispute the trial court's allocation of those debts in the final judgment entry of divorce. However, appellant argues the trial court made several specific errors relating to the division of the parties' assets.
 {¶ 10} In support, appellant argues that the trial court erred by not considering whether a 1988 Oldsmobile Cutlass Ciera, valued at $200, and "McCloud Angus Meats," a Michigan business partially owned by appellant, were marital or separate property. Appellant argues that the trial court failed to account for and/or value all of the parties' assets because the court: 1) did not award her specific "personal" items and failed to consider the value of "stuff" owned by the parties' children; 2) failed to award her at least "some compensation" for appellee's $200,000 life insurance policy; and 3) erroneously found that appellant's father gave the parties $10,000 to start a business, and that appellant took "approximately $10,000 in assets with her" when she and appellee separated.
 {¶ 11} In reviewing the trial court's decision on appeal, we are required only "to examine the overall equity of the division of marital assets and not to conduct a line-by-line analysis of every item of marital property." Waller v. Waller, 7th Dist. No. 04 JE 27, 2005-Ohio-5632, at ¶ 7, citing Fergus v. Fergus
(1997), 117 Ohio App.3d 432, 438. Ultimately, a trial court's division of marital property will not be reversed on appeal absent a finding that the court abused its discretion. Holcombv. Holcomb (1989), 44 Ohio St.3d 128, 131; Martin v. Martin
(1985), 18 Ohio St.3d 292, 294-295. An abuse of discretion connotes more than a mere error of law or judgment, instead requiring a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 12} As to appellant's first argument, R.C. 3105.171(B) provides:
 {¶ 13} "In divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property. * * * [U]pon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section. * * *."
 {¶ 14} "Marital property" is defined by R.C. 3105.171(A)(3) as:
 {¶ 15} "(a) * * *
 {¶ 16} "(i) All real and personal property that currently is owned by either or both of the spouses, * * * that was acquired by either or both of the spouses during the marriage;
 {¶ 17} "(ii) All interest that either or both of the spouses currently has in any real or personal property * * * that was acquired by either or both of the spouses during the marriage; * * *
 {¶ 18} "(b) `Marital property' does not include any separate property."
 {¶ 19} At the final divorce hearing, appellee presented unrebutted testimony that a 1988 Oldsmobile Cutlass Ciera was purchased by his sister for $200 after the parties separated. Although appellee testified at the divorce hearing that he was driving the Cutlass Ciera, the trial court's record contains no evidence the vehicle was titled in appellee's name. Appellee also presented unrebutted testimony that, by the time the final divorce hearing was held, his two Michigan businesses, "McCloud Angus Meats" and "Schoolhouse Cabaret," were bankrupt and had no value. As set forth above, in the final judgment entry, the trial court allocated $10,000 in debt from the failed businesses to appellee.
 {¶ 20} On consideration, we find the record contains insufficient evidence to demonstrate that appellee owned the Cutlass Ciera at the time of the divorce hearing. The trial court considered the outstanding $10,000 debt from the bankrupt Michigan businesses and allocated it to appellee. Under such circumstances, we cannot say the trial court abused its discretion with regard to the vehicle and the Michigan businesses.
 {¶ 21} As to appellant's next argument, the record shows that the trial court awarded each party $3,000 in "Personal/Household Goods." Neither party has challenged the trial court's total valuation of the parties' personal property on appeal. However, appellant claims the trial court erred because specific items were not awarded to her as part of the property division. We disagree.
 {¶ 22} It is well established that decisions as to the distribution of a couple's property upon divorce are reviewed for an abuse of discretion. Cherry v. Cherry (1981),66 Ohio St.2d 348, 355. In making such decisions, the trial court is required to consider the value of the parties' major assets; however, the trial court cannot be expected to place a value on each individual item of personal property owned by the parties. Zonav. Zona, 9th Dist. No. 05CA0007-M, 2005-Ohio-5194, at ¶ 5, citing Kohler v. Kohler (Aug. 14, 1996), 9th Dist. No. 96CA006313.
 {¶ 23} Appellee testified at the final hearing that appellant removed several "Durango loads" of personal items and other valuables from the marital home before she moved out. In contrast, appellant testified she left personal items in the home, including "some things" belonging to her mother. In addition, the record contains appellant's "Exhibit G," which lists items appellant said she was "asking for" in the divorce. However, appellant did not testify which of the items listed in Exhibit G, if any, were in her possession at the time of the divorce hearing, and the record contains no evidence as to the value of the items listed in Exhibit G. Similarly, although appellant testified at the hearing that boxes of "stuff" belonging to the parties' children may have been taken from the marital home, she did not identify which items were missing.[1]
 {¶ 24} On consideration of the foregoing, we cannot say that the trial court abused its discretion in this case by awarding each of the parties $3,000 in "Personal and/or Household Goods" currently in their possession at the time of the hearing. Appellant's argument is without merit.
 {¶ 25} As to whether appellant is entitled to "some compensation" from appellee's life insurance policies, the record contains affidavits filed by both parties, in which they classified appellee's life insurance policies, with respective face values of $125,000 and $200,000, as "term" policies. Appellee stated in his affidavit that his term life insurance policies had no cash surrender value. The record does not contain a copy of either policy, and appellant testified at the divorce hearing that she was not the record owner of either policy.[2] Although appellant testified at the divorce hearing that she made payments on the $200,000 policy, she did not state the amount of such payments.
 {¶ 26} On consideration, we find the record contains no evidence that either of appellee's life insurance policies had a cash surrender value or what, if anything, was contributed to the policies by appellant. Accordingly, we cannot say the trial court abused its discretion by awarding the policies to appellee without giving appellant any "compensation."
 {¶ 27} As to appellant's remaining arguments, she correctly states that the trial court erroneously found appellant's father loaned the parties $10,000 to start a business in Michigan. However, both parties testified that appellant's father loaned them $10,000 to purchase the marital home. Appellee's Michigan business was then financed by a $10,000 second mortgage on that home. In the final judgment entry of divorce, the trial court allocated both the $6,773 negative equity in the marital home and the $10,000 debt incurred through appellee's failed business ventures in Michigan to appellee.
 {¶ 28} Accordingly, although the trial court misstated the purpose of the loan from appellant's father, appellant has not demonstrated that she suffered any prejudice due to the trial court's error.
 {¶ 29} Finally, appellant asserts the trial court erred when it found that she took "approximately $10,000 of marital assets" when she left the marital home on August 27, 2003. In support, appellant argues the record contains "insufficient evidence" to support the trial court's finding. We disagree.
 {¶ 30} At the divorce hearing, appellee testified that appellant left with "$10,000 in cash," comprised of "all the house payments, the car payments, the van payments, that she had not been making that [appellee] had been giving her the money for all along." In its final judgment entry, the trial court found that "[appellant] took approximately $10,000 in marital assets with her when she left and separated from [appellee], some of which was used to pay marital debt, and approximately, $7,000 of which cannot be accounted for, but presumably was used for maintenance and living expenses."
 {¶ 31} On consideration, we find the record contains some evidence to support the trial court's finding. In any case, as set forth above, the trial court ordered appellee to assume $20,669.87 of the parties' marital debt, while appellant was ordered to assume only $1,808.50 of marital debt. Accordingly, appellant has failed to show how such a finding, even if erroneous, produced an inequitable result in this case.
 {¶ 32} This court has considered the entire record that was before the trial court and, upon consideration, finds the trial court did not abuse its discretion in determining and distributing the parties' marital property and allocating the martial debts. Appellant's sole assignment of error is not well-taken.
 {¶ 33} The judgment of the Fulton County Court of Common Pleas, Domestic Relations Division, is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Fulton County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Arlene Singer, P.J., Dennis M. Parish, J., William J. Skow,J., Concur.
[1] The only specific item of "stuff" listed by appellant was a New York Yankees baseball uniform owned by appellee's oldest son from a prior marriage, which appellant claims was missing after the parties separated. However, no evidence was presented as to the value of the uniform, and appellant does not claim on appeal that it should have been part of the marital estate.
[2] Appellant testified at the hearing that she was, at one time, the owner of the $200,000 policy; however, she offered no explanation as to how the policy could have been converted to appellee's ownership without her express consent.