Defendant-appellant Robert Eskridge appeals from his conviction for murder with firearm specifications (R.C. 2903.02), following a jury trial. Defendant claims the trial court's improper admission and exclusion of certain evidence deprived him of his constitutional right to a fair trial. We find no error and affirm.
The Cleveland Police responded to a phone call about a shooting at E. 66th Street and Zoeter Avenue on Cleveland's east side on April 5, 1997, at 2:58 a.m.
When Det. Beaman arrived on the scene, he found the victim, Ernest Bremer, dead in the front seat of his car, which was in the middle of Zoeter Avenue in front of 6613 Zoeter. Later laboratory results indicated Bremer had cocaine in his blood and urine at the time of his death. Det. Beaman found one bullet casing on E. 66th Street in front of the Meat Market and a second casing between Bremer's legs. These casings were determined to have come from the same gun. Fresh glass was also found on E. 66th Street in front of the Meat Market, in the same area as the first casing. Det. Beaman observed a bullet indentation in the car's side molding between the driver's window and the rear driver's side window. The rear driver's side window was broken out, and glass found in the car's back seat was the same type as the glass found on E. 66th Street. According to Det. Beaman, one shot was fired on E. 66th Street, a fact confirmed by Det. Moore who also testified. The gun from which these shells were fired was never found.
Det. Moore testified that on April 8 and 9, 1997, the Cleveland Police obtained arrest warrants for Kevin Hafley and defendant Eskridge on charges of aggravated murder of Bremer. On April 9, 1997, he and two other officers searched a house at 1426 East 61st Street looking for Hafley and Eskridge. The only persons located in the house at the time of the original search were an elderly couple, relatives of Mr. Hafley and his nephew, defendant Eskridge. Later the same day, the police conducted a second search of the house, when they found and arrested Eskridge.
Det. Moore testified that on April 10, 1997, Hafley went to the police station with his parents and gave a written statement to Det. Moore implicating his nephew, defendant Eskridge, in the death of Bremer. Hafley stated that while he "was down the way on Zoeter * * * he saw a few guys chasing a car as it turned from E. 66th onto Zoeter." He stated that the car stalled and that his nephew, defendant Eskridge, ran up to the car and shot into it twice. In his April 10, 1997 statement, Hafley denied having any contact with Bremer on April 5, 1997.
Both Hafley and Eskridge were indicted and charged with the aggravated murder of Bremer. Hafley entered into a plea bargain with the State. On July 31, 1997, Hafley pleaded guilty to involuntary manslaughter (R.C. 2903.04(B)), a felony of the third degree. His plea was entered prior to the trial of Eskridge, but Hafley had not been sentenced as of the time of the trial.
Det. Moore testified that after reaching his plea agreement with the State, Hafley made a second statement to the police on August 8, 1997, in which he admitted he had been trying to sell drugs to the victim. Moore also opined that one shot was fired on East 66th Street, while the second shot was fired on Zoeter Avenue.
Hafley testified on behalf of the State at Eskridge's trial. He was the only witness who identified Eskridge as being near Bremer's car or having a gun on April 5, 1997. Hafley was thirty years old and unemployed at the time of his arrest in April 1997. He admitted that he had prior convictions for drug abuse, aggravated burglary and attempted auto theft. He acknowledged that he served time in prison and that he used crack cocaine. Hafley also admitted to being a liar, a thief and a seller of drugs.
Hafley acknowledged that he had pleaded guilty to involuntary manslaughter in connection with the death of Bremer; that he was facing one to five years; that he was told it was probationable; and that he had not been sentenced at the time of trial, the other charges being dismissed.
Hafley testified that on April 5, 1997, he was alone when he walked from E. 74th Street to E. 66th Street and Zoeter, arriving at 2:30 a.m. for the purpose of selling three rocks of crack cocaine which he had obtained "from another dope dealer."
Hafley testified that as he walked along E. 66th Street, Bremer's car "pulled up alongside" near the Meat Market, which is located on the east side of E. 66th Street just north of Zoeter. Bremer's car was traveling south along E. 66th Street heading toward Zoeter. As noted previously, in his original statement to the police on April 10, 1997, Hafley denied having any contact with Bremer. At trial, he testified that he engaged in a crack cocaine transaction with Bremer on April 5, 1997.
Hafley gave conflicting versions as to the precise location where he had his initial contact with Mr. Bremer. During cross-examination, Hafley agreed that Bremer pulled over on the wrong side of E. 66th Street, up to the curb, directly in front of the Meat Market; later during cross-examination, Hafley said that Bremer pulled up across the street from the Meat Market.
During his testimony, Hafley stated Bremer asked Hafley if he had something. According to Hafley, he replied that he did and Bremer told him to get in the car. Hatley said that he got in on the passenger side and put three rocks of crack in Bremer's hand. At this point, Bremer said he did not have any money. Hafley said he told Bremer to pull over and Bremer did so, at which point Hafley said he opened the door to get out and reached back in an effort to get his rocks. Hafley testified that Bremer then took off and turned onto Zoeter, at which time Hafley grabbed the gearshift and the car started to jerk. He testified that his feet were out of the car and that he was hanging onto the gear shift to keep from falling out of the car. However, in his original statement to the police, Hafley expressly denied ever being in Bremer's car, which he described as a two-door car when, in fact, the car was a four door.
Hafley further testified Eskridge was the person who fired a gun and that Hafley heard two shots. Again, he gave different versions as to this allegation. On direct examination, Hafley stated that he was in the front passenger seat, heard a shot, and that the glass broke on the back driver's side of Bremer's car. He said he turned around, saw his nephew on the driver's side holding a gun, and then heard another shot. Hafley testified that after the second shot he "took off running." Later, during his direct testimony, Hafley said he was running and "I looked and I seen him shooting a guy." On cross-examination, Hafley testified "* * * I am laying like this and I heard a pow, pow I got out of the car and turned around and I seen my nephew." In his statement to the police on August 8, 1997, Hafley said he heard a pow, saw a lot of people running, and then started running. He stated he then heard another shot and looked back and saw his nephew Eskridge with a gun. In Hafley's statement to the police on April 10, 1997, he said that he was standing on Zoeter Avenue and that he saw Eskridge shoot into the car twice.
Hafley admitted that he lied repeatedly in his statement to the police on April 10, 1997 for the reason he did not want to get involved. Hafley made his plea bargain prior to making his second statement to the police on August 8, 1997.
Hafley also testified that he had been incarcerated the last seven months. During direct testimony, Hafley stated, over a defense objection, that since April 1997, he had seen Eskridge "in here." He also testified that he had talked to Eskridge about the case when "we got in the City jail." The second jail reference was the subject of an objection which was sustained, but the statement was not stricken nor was it the subject of a cautionary instruction. Hafley testified that his sister, Narkeita Eskridge, was Eskridge's mom, and that she was a quadriplegic who became paralyzed because Eskridge's father accidentally shot her in the neck.
Sharon Rosenberg testified for the State. She works for the Cuyahoga County Coroner in the Trace Evidence Laboratory. She examined Bremer's hands on April 5, 1997, and from her testimony, found gunshot residue on the back of Bremer's right and left hands and the palm of his right hand. This means that Bremer was near a gun that had been discharged. She stated that the distance between the muzzle of a discharged gun and its target will be no more than two or three feet if gunshot residue is present on the target. Gunshot residue was also found to be present on the doorpost of Bremer's car. However, she did not find any nitrates on his jacket, which led her to estimate that the distance between the muzzle of the gun and the jacket was two to three feet or beyond.
Since she did not have a gun to test, she could only estimate the firing distance from the nitrates test. Det. Caswell of the Trace Evidence Laboratory testified that he dusted Bremer's car, including the gearshift, for prints but found none.
Dr. Robert Challener from the Coroner's office testified on behalf of the State as to his understanding that the shots were fired on E. 66th Street before the car turned onto Zoeter Avenue. He based this understanding on the information recorded in the Coroner's Verdict. At the end of the State's case, over objection, the court permitted the State to offer into evidence the autopsy protocol without the Coroner's Verdict, the latter of which stated that the shots were fired on E. 66th Street before the car turned onto Zoeter. The court found it to be double hearsay as it was based on information provided by the police and was testified to by a person who did not take down the information.
Ebony King, 15 years old, testified that that night she was in a car parked at East 66th and Zoeter around 3:00 a.m. listening to music with a friend. She saw a car with Hafley hanging out of the front passenger side drive by and then turn down Zoeter. She then heard two shots and ducked down into the seat. She did not know who fired the shots as there were several people on the corner where the shooting occurred. The defendant, however, was one of the people she identified to police as being in the area of the shooting.
Judy Alexander testified for the State that she lives at 1454 E. 66th Street, across from the Meat Market. She said she was awakened by three shots at 3:23 a.m. and looked out her front window. She saw people in the street and a man who looked like he was bent over in a car on Zoeter. She did not identify the males that she said she saw after she was awakened.
The prosecutor asked Ms. Alexander if there was any unusual activity which went on in the area and she replied "they sell drugs in front of my house." She was then asked if she recognized the people who sell drugs and she said "yes." The prosecutor then asked her if anything unusual was going on on April 4, 1997, and she replied "well, the same thing * * * the two boys was out there * * *." She then said defendant Eskridge was one of them. Defense counsel objected to the attempt to put Eskridge's character in issue. After Ms. Alexander finished her testimony, the court offered to give the jury a "curative instruction" and inform them that "* * * this is a homicide case not a drug case * * * the jury is entitled to consider the testimony of all witnesses as part of the surrounding facts and circumstances of this case, including any testimony regarding activity that was taking place as part of the surrounding circumstances * * * Defendant is not charged with a drug violation." (Tr. 374-75). Defense counsel declined the proposed instruction, stating that it would further prejudice his client. Based on the above evidence, the jury found the defendant guilty of murder and the firearm specifications. He was thereafter sentenced to fifteen years to life for murder to be served consecutive to and after a three year term for the merged firearm specifications. Defendant timely appeals.
For ease of reference, we will consider defendant's two assignments of error together.
 I. THE TRIAL COURT MADE MULTIPLE EVIDENTIARY ERRORS, INCLUDING: ADMITTING, OVER-OBJECTION AND IN VIOLATION OF EVID.R. 403 AND EVID.R. 404, TESTIMONY THAT APPELLANT HAD PREVIOUSLY SOLD DRUGS, AND TESTIMONY THAT APPELLANT WAS IN JAIL AT THE TIME OF HIS TRIAL; AND EXCLUDING, OVER OBJECTION AND IN VIOLATION OF EVID.R. 106, THE CORONER'S VERDICT. THE CUMULATIVE EFFECT OF THESE ERRORS WAS PREJUDICIAL AND DEPRIVED THE APPELLANT OF HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION.
 II. IT WAS PLAIN ERROR FOR THE TRIAL COURT TO ADMIT, IN VIOLATION OF EVID.R. 403 AND EVID.R. 404, TESTIMONY THAT APPELLANT'S FATHER SHOT APPELLANT'S MOTHER, CAUSING HER TO BE PARALYZED; THE EFFECT OF THIS ERROR, JUXTAPOSED WITH OTHER PROPERLY PRESERVED EVIDENTIARY ERRORS, WAS PREJUDICIAL AND DEPRIVED THE APPELLANT OF HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION.
The essence of these assignments of error is that the trial court erred in the admission or exclusion of irrelevant and prejudicial testimony. These assignments of error focus on four areas: (1) defendant was one of the boys that sold drugs in front of Ms. Alexander's house (Tr. 356-58); (2) defendant was in "County Jail" with Hafley (Tr. 384, 415); (3) defendant's father shot his mother (Tr. 303); and (4) improper exclusion of the Coroner's Verdict (Tr. 707-08)
This Court in State v. Mays(1996), 108 Ohio App.3d 598, 617
set forth the standard of review regarding evidentiary errors as follows:
 The admission and exclusion of evidence are within the broad discretion of the trial court. A reviewing court should be slow to interfere unless the court has clearly abused its discretion and a party has been materially prejudiced thereby. Shimola v. Clevelan
(1992) 89 Ohio App.3d 505, 511. See, also, State v. Simmons(1989), 61 Ohio App.3d 51, 517; State v. Bresson(1990), 51 Ohio St.3d 123, 129; State v. Finnerty(1989), 45 Ohio St.3d 104, 109; State v. Miller(July 28, 1994), Cuyahoga App. No. 65929, unreported at 2. An abuse of discretion is more than a mere error of judgment or of law; rather, it is conduct that is arbitrary, capricious, unreasonable, or unconscionable. State v. Moreland(1990), 50 Ohio St.3d 58, 61; State v. Adams(1980), 62 Ohio St.2d 151, 157.
We find no abuse of discretion in the trial court's allowing Ms. Alexander's testimony that the defendant was a drug dealer who conducted his business in front of her home. Ms. Alexander's home was located on East 66th in the vicinity of the murder. She testified that the defendant was in front of her home as usual earlier that night. This information was relevant to placing the defendant at the scene of the crime. To be sure, it was five hours earlier than the actual shooting but that goes to the weight of the evidence not its admissibility. Furthermore, the surrounding facts of the murder, as developed by the prosecutor, were that the murder was the result of a drug deal that went bad. Hafley, who is the defendant's uncle, was selling drugs to the victim, who attempted to drive off without paying for the drugs. The defendant, previously plying his drug trade with Hafley, was in the vicinity and apparently took action. This would explain the identity of the gunman and his motive in shooting the victim. Pursuant to Evid.R. 404 (B):
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity there with. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
In the case herein, this evidence went both to identity and motive. See State v. Matthews(1992), 80 Ohio App.3d 409, 415
("admission of defendant's drug involvement was inextricably related to the [murder] case. * * * [It] was related to purpose of motive, intent, identity, absence of mistake or accident.") Furthermore, the trial court permitted this evidence only after a lengthy sidebar. (Tr. 358-62). Later, the court offered to give a curative instruction to the jury that they should only consider the information as part of the surrounding facts and circumstances of the case. (Tr. 374-75). Defense counsel decided against such an instruction as he thought it would bring more attention to the matter which he wanted to avoid. Therefore, any error regarding this testimony was waived. See State v. Gillespie
(Sept. 27, 1990), Cuyahoga App. No. 57568, unreported.
There was also no error regarding the trial court's failure to give a curative instruction regarding Hafley's testimony that he saw the defendant while in the City jail. This fleeting reference to the "City Jail" was the subject of lengthy sidebars both before and after the testimony in which the court sustained the objection. (Tr. 384-400; 415-19). In any event, the statement was objected to and sustained. (Tr. 415). No curative instruction was requested at this time; therefore, any claim of error was waived. See State v. Sibert(1994), 98 Ohio App.3d 412, 424 (appellant failed to request a curative instruction at the time the objection was sustained; therefore, any failure to give a curative instruction was waived). Furthermore, the fact that the defendant was in jail pending trial is not prejudicial as the jury was well aware that the defendant was arrested and indicted for the murder of the victim.
The trial court should have admitted the Coroner's Verdict with the autopsy report as the coroner testified to the contents thereof on cross-examination. However, there was no prejudicial error regarding the trial court's decision to exclude the Coroner's Verdict form since the information that defense counsel found relevant within the verdict form was testified to by the coroner. (Tr. 285). See Vitti v. LTV Steel Co.(Feb. 9, 1995), Cuyahoga App. No. 66686, 67052, unreported (since witnesses testified to contents of exhibit no material prejudice resulted from its exclusion). According to the Coroner's Verdict form, the police informed the coroner the shots were fired on East 66th street. The coroner admitted on cross-examination that this is what the verdict form stated. (Tr. 285). Defendant used this information in his closing argument to impeach Hafley's testimony that both shots were fired on Zoeter Avenue. (Tr. 745). Furthermore, Det. Moore who investigated the scene admitted that a shell casing was found on East 66th street. However, another shell casing was found between the victim's legs. According to Moore, the first shot was fired at the corner of East 66th and Zoeter and the final shot was fired on Zoeter Avenue. (Tr. 666-67). Therefore, the jury had before it conflicting testimony as to where the shots were fired and it was within their judgment to reconcile any inconsistencies. In the absence of a proffer, we have no basis for determining the defendant was materially prejudiced by the court's exclusion of the Coroner's Verdict. Evid.R. 103(A)(2); Patterson v. Ravens-Metal Prod.,Inc.(1991), 72 Ohio App.3d 216, 229.
The above objections were also the subject of extensive sidebar discussions which further indicate that the trial court's ruling on these matters was not arbitrary or capricious. As we indicated, we also do not find the rulings to be unreasonable or unconscionable. Therefore, since the trial court did not abuse its discretion in these matters we find no reason to Interfere.State v. Mays, supra.
Finally, we find no merit to the defendant's argument that he was prejudiced by defense counsel's failure to object to Hafley's testimony regarding the fact that defendant's father accidentally shot the defendant's mother in the neck thereby paralyzing her. The Supreme Court in State v. Slagle(1992), 65 Ohio St.3d 597,605 set forth this Court's standard of review in applying the plain error doctrine as:
 * * * whether the alleged error substantially affected the outcome of the trial. The appellate court must examine the error asserted by the defendant-appellant in light of all the evidence properly admitted at trial and determine whether the jury would have convicted the defendant even if the error had not occurred. This inquiry assures that justice is done in individual cases.
In the instant case, the fact that defendant's father shot his mother in the neck when the defendant was a young child did not affect the outcome of the trial. There was substantial evidence presented of defendant's guilt. Hafley testified that he was at E. 66th Street and Zoeter selling drugs that night. The victim drove his car alongside Hatley and asked if he had something. Hafley testified that he got in on the passenger side of the car and put three rocks of crack into the victim's hand, at which time the victim said he did not have any money. Hafley told the victim to pull the car over, at which point Hafley reached back in an effort to get his rocks. The victim then took off in his car, swinging around the corner. Hafley grabbed the gearshift and the car started to jerk. Hafley testified that he was dragged by the victim's car. Moments later he heard a gunshot and the window shattering. He looked back and saw defendant with a gun. Ms. King, an independent and disinterested witness, testified that she saw defendant at the scene and Hafley hanging out of the front passenger side of a car with the door open. From the testimony of Sharon Rosenberg, the jury could properly conclude that the victim was shot from outside the car, again corroborating Hafley's testimony.
Based on the foregoing, we find no reversible error in the trial court's evidentiary rulings and no plain error which would justify overturning the jury's verdict.
Assignments of Error I and II are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KAPPINSKI, J. and ANNE L. KILBANE, J. CONCUR.
 ___________________________________ JAMES M. PORTER ADMINISTRATIVE JUDGE
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26 (A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26 (A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. 112, Section 2(A)(1).